IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFFREY BARHAM, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civ. No. 02-2283 (EGS) |
| v. ) | |
| ) | |
| CHIEF CHARLES H. RAMSEY, et al., ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF MONTE C. STRAIT

I, Monte C. Strait, hereby state and declare as follows:

1. I have been employed as a Special Agent by the Federal Bureau of Investigation ("FBI" or "Bureau") since 1974. My present assignment is Section Chief, Programs Development Section, Criminal Justice Information Services Division ("CJIS"), in Clarksburg, West Virginia. I have held this position since February, 2003 and am a member of the FBI's Senior Executive Service. Prior to beginning my present assignment, I served as the Assistant Special Agent in Charge ("ASAC") of the FBI's Kansas City Division from March, 1999 through February, 2003. The contents of this declaration are based on my personal knowledge and upon my review and consideration of documents and information made available to me in my official capacity, including information provided to me by Special Agents and other employees of the FBI.

2. In my present position, I am the senior FBI official responsible for the management and operations of the Programs Development Section ("PDS"). The mission of the PDS is to improve law enforcement's effectiveness and promote public safety and terrorism

prevention through development and enhancement of criminal justice information programs. In order to accomplish this mission, the PDS provides support to both domestic and international law enforcement agencies.

3. I understand that plaintiff Jeffrey Barham has filed suit in the United States District Court for the District of Columbia regarding arrests made in Pershing Park in the District of Columbia by law enforcement authorities on September 27, 2002 during the World Bank/International Monetary Fund ("WB/IMF") meeting. I am aware that FBI Supervisory Special Agent ("SSA") James W. Rice, II, assigned to the Washington Field Office, has previously submitted a declaration in this lawsuit explaining the FBI's role regarding the September 2002 WB/IMF meeting, and I incorporate that declaration herein by reference. I submit this declaration to supplement SSA Rice's declaration and to specifically advise the Court of the duties performed by FBI CJIS personnel in connection with the post-arrest processing of the individuals arrested in Pershing Park. However, FBI personnel made no arrests in Pershing Park that day, did not assist with any arrests made in Pershing Park that day, and did not direct or advise that any such arrests be made.

4. Pursuant to a request by the Metropolitan Police Department ("MPD") during the advance contingency planning for the WB/IMF meeting, the CJIS Division provided fingerprint support staff and equipment to assist MPD with post-arrest identification. Such assistance is routinely requested by law enforcement agencies, such as the MPD, for special events that may result in a large number of arrests. CJIS assistance to District of Columbia law enforcement officials is authorized by 28 U.S.C. § 533.

5. In this particular case, CJIS assistance to MPD consisted of sending a "fly-away"

team, consisting of portable fingerprint processing equipment and personnel to operate that equipment, to assist with the post-arrest identification of individuals. CJIS Fly-away teams electronically scan ten-print fingerprint cards or "live-scan" fingerprints at remote locations and submit the digitized images to the Integrated Automated Fingerprint Identification System ("IAFIS") at the FBI CJIS Division in West Virginia where the images are searched against the existing criminal fingerprint database containing over 44 million fingerprints. IAFIS search responses (identifications and non-identifications) to law enforcement agencies normally occur electronically in less than two hours.

6. During the WB/IMF meeting, the gymnasium at the MPD Academy was used as a detention center by the MPD for individuals arrested in Pershing Park. At the MPD Academy, arrestees were processed, which included fingerprinting, photographing and completion of arrest-related paperwork. This processing was done entirely by MPD personnel. CJIS personnel did not transport, and had no role in the transportation of, arrestees to the MPD Academy and were not involved in any of the processing procedures.

7. During the WB/IMF meeting, the CJIS fly-away team operated portable fingerprint processing stations in the gymnasium at the MPD Academy. Each workstation consisted of a laptop computer, a flat bed scanner, and equipment to facilitate communications between the remote workstations and the CJIS Division. The CJIS personnel assigned to this particular fly-away team consisted of thirteen support employees.

8. The CJIS portable fingerprint processing stations were initially set up at the bottom of a stairwell and later relocated alongside one wall inside the MPD Academy gymnasium. Each completed ten-print fingerprint card of an arrestee, taken by MPD personnel,

was forwarded to a fly-away team member. Each fingerprint card was then digitally scanned and identification data from the MPD fingerprint card entered into IAFIS by the fly-away team member, using remote communication links with CJIS in West Virginia. The result of the IAFIS fingerprint check, along with the fingerprint card originally provided by MPD, was then returned to MPD personnel in the gymnasium.

9. The fact that an arrestee's fingerprints were submitted to IAFIS before the individual was formally charged is not at all unusual. One of the goals of the IAFIS system is to provide a rapid means of verifying the identity of an arrested individual. Any delay in submitting fingerprints until after an individual has been formally charged or until there has been some disposition of the charge could compromise public safety.

10. I have been informed that the MPD Academy gymnasium was also being used as a detention center and that arrestees were therefore seated on mats in the center of the gymnasium floor. Although various arrestees were occasionally in close proximity to CJIS personnel, at no time did CJIS personnel assigned to this operation have direct contact with any arrestee. I have been advised that, in order to avoid possibly being mistaken for arrestees, the CJIS personnel working in the gymnasium wore FBI identification while they performed their duties. This identification was, of course, visible to various arrestees seated in the gymnasium. Due to the proximity between the arrestees and CJIS personnel, CJIS personnel may have had informal conversations with arrestees located nearby, but no interrogation or questioning of any arrestees was conducted by CJIS personnel.

11. I have been informed that plaintiffs allege they were photographed by FBI personnel at the MPD Academy gymnasium. As discussed above, the arrestees were

-4-

photographed by MPD personnel at the gymnasium as part of their post-arrest processing. CJIS personnel did not participate in this process and did not take photographs of any individual arrestee.

12.     However, I have been further advised that some of the CJIS personnel who traveled to Washington, D.C. for this assignment took personal photographs of various locations in Washington, D.C. during their temporary assignment. These photographs were taken using their own cameras, and the personnel taking the photographs had not been directed or instructed to take such photographs. Among the photographs taken by CJIS personnel while they were in Washington were panoramic photographs of the scene inside the MPD gymnasium where the CJIS employees were working. Since the arrestees were sitting on mats in the center of the gymnasium floor, groups of arrestees appear in several of these photographs. None of these photographs are of individual arrestees. These photographs were not taken for any identification purpose; indeed, the identity of the arrestees included in these photographs is unknown, and the FBI has made no effort to determine the identity of individuals in these photographs. A copy of one of these panoramic photographs taken inside the MPD gymnasium is attached to this Declaration. This photograph, like the other photographs taken by CJIS employees during their temporary assignment in Washington, D.C., was not taken at the direction or request of FBI personnel and was not taken with FBI equipment.

13.     I have also been advised that plaintiffs' counsel represented in open court at a hearing in this matter on September 11, 2003, that plaintiffs and class members have been identified as political protestors in a secret FBI database. This is patently false. There is no FBI database identifying political protestors.

14. The fact of any individual's arrest in Pershing Park on September 27, 2002 may, however, be reflected in an entry in the FBI's criminal history databases, i.e., the Fingerprint Identification Records System ("FIRS") and the National Crime Information Center ("NCIC") Interstate Identification Index ("III"). See 28 C.F.R. § 20.3(l) and (m). The FBI collects, preserves, and exchanges such criminal identification data pursuant to 28 U.S.C. § 534. I have been advised that the individuals arrested in Pershing Park were arrested for "failure to obey" or "failure to disperse." While these charges would have been entered into the FBI criminal history databases in conjunction with an individual's arrest on September 27, 2002, these charges carry no inference that any individual was a political protestor. Moreover, since the charges against the individuals arrested in Pershing Park were not pursued, such a record indicates merely that a person has been arrested and does not indicate that the person has been convicted of any crime in connection with these events.

15. To the extent that plaintiffs complain that their fingerprints and criminal history information have been retained in the FBI's criminal history databases even though they were not formally charged, plaintiffs have been treated no differently than any person arrested whose fingerprints and personal identification information were contributed to those databases by an authorized arresting law enforcement agency. As I have previously explained, fingerprints and arrest information are routinely submitted to the FBI's criminal history databases by a contributing law enforcement agency after an arrest has been made, prior to any disposition of the charges. Once a disposition of charges has occurred, including dispositions such as that a prosecutor has elected not to proceed with charges, 28 C.F.R. § 20.3(i), it is the responsibility of the contributing criminal justice agency to provide that disposition data to the FBI's criminal

history databases. See 28 C.F.R. § 20.37.

16.     Because of this litigation and plaintiffs' allegations, a computer search was conducted to determine whether the FBI's criminal history databases contained information regarding the arrest of any of the named plaintiffs in Pershing Park on September 27, 2002. The search was conducted using the names of the plaintiffs (as they appear in the caption of this lawsuit), the arrest date of September 27, 2002, and the MPD as the contributing law enforcement agency.

17.     The results of the name-based search of the FBI's criminal history databases indicate that six of the names contained in the case caption are names of individuals arrested by MPD on September 27, 2002. It further appears that two additional names, similar to names contained in the case caption, are also names of individuals arrested by MPD on September 27, 2002. It should be noted that these search results are based on the name of the individual and the date of arrest in Washington, D.C., and are therefore not positive identifications. A fingerprint check would be required to verify the identity of these individuals.

18.     However, the name-based searches of the FBI's criminal history databases did not locate any information under the names of the remaining named plaintiffs reflecting any arrest by the MPD on September 27, 2002. It is my understanding that this is likely because many of the individuals arrested in Pershing Park had no prior record in the FBI's criminal history databases, did not correctly identify themselves to the MPD, and were therefore identified by the MPD as John or Jane Doe.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing is true and correct. Executed on October __9__, 2003, in Clarksburg, West Virginia.

                                                                  /s/ Monte C. Strait
                                                                  Monte C. Strait
                                                                  Section Chief
                                                                  CJIS Programs Development Section
                                                                  Federal Bureau of Investigation

