### RIGHTS OF THIRD PARTIES

Nothing in this Manual is intended to create an enforceable legal right or private right of action. This Manual is for internal Force use only. Violations of General Orders may be a basis for Force personnel actions.

### NONDISCLOSURE STATEMENT

This Manual contains material exempt from public disclosure. Disclosure of the information herein shall be for official purposes only. Further disclosure is not authorized by the United States Park Police. No part of this Manual may be reproduced in any manner without the approval of the Chief, United States Park Police, or his/her designee.

09/30/96

Rights of Third Parties/Non-Disclosure Statement
Page 1 of 1



SUBJECT: Arrest Procedures    NUMBER: 2103




**GENERAL ORDER**

.01 PURPOSE
.02 POLICY
.03 GENERAL PROVISIONS
.04 ARREST PROCEDURES
.05 INJURY/ILLNESS OF AN ARRESTEE
.06 TRANSPORTING AN ARRESTEE
.07 PROCESSING AN ARRESTEE
.08 DETENTION OF AN ARRESTEE
.09 SPECIAL ARREST SITUATIONS
.10 RESPONSIBILITIES

2103.01  **PURPOSE**

This General Order establishes procedures for the arrest of an adult and the temporary detention of prisoners awaiting release or transportation to a more permanent facility.

2103.02  **POLICY**

The arrest and detention of a person shall be accomplished in an expeditious, legal, professional, and safe manner using only the amount of force necessary to accomplish the task. Further, such actions shall conform to all legal and administrative requirements of the Force and the applicable requirements of the jurisdiction in which the arrest occurs. Once an individual is arrested, it is Force policy to ensure that he/she is detained under proper supervision, in a humane manner, and in an environment that will not unnecessarily impair his/her health or subject him/her to physical abuse, verbal abuse, or unreasonable discomfort.

2103.03  **GENERAL PROVISIONS**

A. An officer shall follow the policies and procedures outlined in this General Order; however, applicable Regional policies and procedures shall take precedence.

B. Except as otherwise indicated in this General Order, the decision to notify employers, spouses, or other family members of the arrest of an individual

Revised 09/30/99

Arrest Procedures (G.O. 2103)
Page 1 of 13

by the Force shall normally rest with the Commander, Office of Inspectional Services, or his/her designee. Requests for such notifications shall be forwarded through the chain of command. This directive shall not preclude officers from contacting an employer, spouse, or other family member when necessary to verify personal information to support the release of the individual or to properly conduct an official investigation.

2103.04   ARREST PROCEDURES

An officer making an arrest while in a duty status shall:

A. Identify himself/herself as a police officer in a clear and understandable voice.

Note: When necessary, an officer should use another method of communication, e.g., foreign language, sign language.

B. Advise the person that he/she is being arrested. The arrestee shall also be advised of the reason for the arrest as soon as possible.

C. Handcuff the arrestee as specified in General Order 3610 "Handcuffs/Flexi-cuffs."

D. Search the arrestee and the immediate area (within legal constraints) for evidence, weapons, or contraband. Except in exigent circumstances, male and female arrestees shall be searched by an officer of the same sex as the arrestee. This does not preclude a "pat-down" (Terry-type) frisk being conducted by an officer of the opposite sex, for safety purposes.

E. Ensure that a criminal investigator is immediately notified of all suspected felonies and those offenses required by Force policy.

2103.05   INJURY/ILLNESS OF AN ARRESTEE

A. An arrestee who is injured, ill, or who claims a need for medical attention shall be immediately taken to a medical facility by an appropriate transport vehicle.

B. The officer responsible for the arrestee shall ensure that:

1. The Shift Commander (through the immediate supervisor) is immediately notified of any illness or injury of the arrestee or request for medical attention by the arrestee.

2. No arrestee who is obviously injured or sick (e.g., open wounds, uncontrolled bleeding, vomiting, fever) or who is unconscious shall

be detained without first receiving or being offered the opportunity to receive professional medical attention. An arrestee who refuses such medical attention shall be asked to sign either a Refusal of Medical Treatment form (USPP Form 144), which should be witnessed, or a standard form used by the medical authority, which shall be submitted with the incident report. The prisoner shall undergo normal prisoner processing procedures after professional medical attention is rendered and the physician has given approval. If an arrestee is transported to a medical facility, a uniformed officer, in most cases, shall maintain custody of the prisoner at the hospital until the prisoner is sent to the appropriate detention facility, unless the hospital has a holding area and the officer is relieved by proper authority.

3. All injuries and illnesses sustained by an arrestee, request for medical attention by an arrestee, as well as any treatment received or refused, shall be documented on the incident report. All injuries shall be personally photographed by a supervisor. Photographs must be submitted with the incident report.

4. If applicable, in the case of an injured prisoner who has not been released from custody and is being transported by ambulance to the hospital, the officer should either accompany or follow the ambulance.

C. When an arrestee is admitted to a medical facility, the Shift Commander shall arrange for a security detail, when needed, until the arrestee is discharged, remanded to the custody of the detention facility, or released from custody.

D. Security Detail Responsibilities

1. <u>Security Detail Officer</u>

a. The officer on the detail should be in uniform, or have the badge exposed for identification purposes.

b. Notify hospital security force of the U.S. Park Police hospital detail.

c. Perform a radio check to ensure that the Force radio works in an emergency (i.e., escape).

d. When an officer arrives on the detail, check the prisoner to ensure proper restraints are on (i.e., handcuffs).

    e. Check the prisoner's immediate area for items that could be used for a weapon against an officer.

  2. <u>Communications Section</u>

   The Communications Section should occasionally check on the radio status of the security detail.

  3. <u>Supervisor</u>

   Each tour, the area Patrol Sergeant should endeavor to stop by and check on the officer and the prisoner.

E. Whenever possible, an officer shall ensure that an arrestee who has or is suspected to have a communicable disease is separated from other persons while in custody. When handling such an arrestee, an officer shall also take reasonable precautions, as indicated in the Guideline Manual entitled "Bloodborne Pathogens Exposure and Infection Control Plan."

2103.06 **TRANSPORTING AN ARRESTEE**

A. The arresting officer shall arrange for the safe transport of the arrestee to the appropriate processing facility.

B. Generally, an arrestee shall be transported by a patrol wagon or a unit equipped with a security barrier, unless otherwise authorized by a supervisor. When a cruiser equipped with a security barrier is used, the security barrier must be in the up position, and the arrestee shall be handcuffed behind his/her back, placed on the right rear seat behind the barrier, and seatbelted. When 2 arrestees are placed on the rear seat, they must be seated with a space between them. Except in exigent circumstances, arrestees shall be seatbelted and not more than 2 arrestees should be placed on the rear seat of a cruiser at one time. In a cruiser without a security barrier, the number of arrestees should not exceed the number of officers transporting arrestees at any time. An officer shall keep his/her weapon securely fastened in the holster during the transport.

C. An officer transporting an arrestee by cruiser shall ensure that the rear doors of the cruiser are locked. The transporting officer should observe the arrestee as much as possible during the transport, but should not compromise driver safety.

D. When authorized by a supervisor, an arrestee may be transported in a cruiser without a security barrier. An officer shall use the following procedures when transporting an arrestee in a cruiser <u>without a barrier:</u>

Revised 09/30/99            Arrest Procedures (G.O. 2103)
                                 Page 4 of 13

    1. An officer operating a cruiser by himself/herself shall place the handcuffed arrestee in the front seat of the vehicle as far to the right in the seat as possible and seatbelt the arrestee. Only in extreme circumstances should a lone officer transport an arrestee.

    2. Two officers transporting one arrestee shall place the handcuffed arrestee in the right rear seat of the vehicle and seatbelt the arrestee. The second officer seated on the left rear seat behind the driver shall be responsible for closely observing the actions of the arrestee.

    3. Two officers transporting two arrestees shall place the handcuffed arrestees on each side of the rear seat of the cruiser and seatbelt them. The officer seated on the front passenger side of the vehicle shall be responsible for closely observing the actions of both arrestees.

E. Leg restraints shall be used when an officer believes an arrestee has the potential for violent behavior. This use shall be recorded on the NPS Form 10-344.

F. During the hours of darkness, an officer transporting an arrestee should turn on the overhead interior light of the cruiser periodically to observe the activity of the arrestee.

G. The transporting officer shall thoroughly search the arrestee and the transporting vehicle prior to and at the conclusion of the transport.

H. Except in exigent circumstances, male and female arrestees shall be transported separately or in a vehicle that permits a physical separation.

I. When an officer transports an arrestee, the dispatcher shall be informed of the odometer reading and the officer's location at the beginning and at the end of the transport.

J. Separate transportation or transportation in a vehicle that permits a physical separation shall be provided when, in the officer's judgment, arrestees display hostility towards one another.

K. When possible, persons charged with Assault on a Police Officer shall not be transported by the assaulted officer.

L. Whenever feasible, an arrestee shall be transported in an upright, seated position. In situations when an arrestee is transported in a prone position, the transporting officer shall closely and continuously monitor the breathing of the arrestee.

2103.07   **PROCESSING AN ARRESTEE**

    A.    When possible, persons charged with Assault on a Police Officer shall not be processed by the assaulted officer.

    B.    An officer processing an arrestee shall secure his/her weapon in a Force-approved storage container (designated by the Field Office/Station Commander) upon his/her arrival at the processing facility.

    C.    An arrestee shall be thoroughly searched upon arrival at the processing facility, regardless of any previous searches.

        1.    No strip search shall be conducted except pursuant to the criteria listed in a, b, and c:

            a.    The officer has reason to believe that weapons, contraband, or evidence are concealed on the arrestee's person or clothing.

            b.    The officer notifies and obtains the prior consent for a strip search from a supervisor at or above the rank of Sergeant. If the requesting officer is at or above the rank of Sergeant, no further supervisor notification or consent is required.

            c.    The search shall be conducted by an officer of the same sex as the arrestee, under secure conditions that afford privacy. Another officer shall be stationed outside the search area.

            d.    The strip search shall be documented on a Supplemental Criminal Incident Record (NPS Form 10-344B) by the officer requesting the strip search. The NPS Form 10-344B shall include (1) a brief statement of the reason(s) for the strip search, (2) the name of the officer who conducted the strip search, and (3) the name of the supervisor who authorized the strip search (this can be the requesting official if at the rank of Sergeant or above - see paragraph b above).

        2.    Visual body cavity searches in which neither the officer nor any other person touches the arrestee shall be treated as a strip search for the purpose of this General Order. An officer acting under the authority of another jurisdiction whose procedures for strip searching and body cavity searching are more restrictive shall abide by the procedures of that jurisdiction.

3. A body cavity search (excluding the mouth) shall not be performed unless the following criteria are met.

   a. The officer has reason to believe that weapons, contraband, or evidence are concealed within the arrestee's body cavities.

   b. Prior notification is made to the Shift Commander through the officer's immediate supervisor.

   c. Verbal permission from a prosecutor or a search warrant is obtained. The discretion of the prosecutor shall be followed.

   d. Arrangements can be made to transport the arrestee to an appropriate medical facility, where medical personnel shall perform the search.

   e. A uniformed officer of the same sex as the arrestee is present at all times during the search. This officer shall take custody of all evidence.

D. An officer who makes an arrest shall make arrangements for the handling of an arrestee's property in accordance with the provisions of General Order 3211 "Evidence/Property" and other applicable policies and procedures established for Force officers.

E. Prisoner interrogations should be conducted in a secure area away from other prisoners.

F. An officer who enters the detention room or processing area where prisoners are being processed shall be unarmed (e.g., no firearm, knife, other defensive equipment) unless an emergency condition exists.

G. Males and females may be processed in the same area, but shall not be placed in the same detention room. Juveniles and adults may also be processed in the same area, but shall not be placed in the same detention room.

H. If not in the presence of an officer, security of the prisoner shall be maintained at all times through one of the following. The prisoner shall be:

   1. Confined to the detention room.

   2. Secured via handcuffs by the officer to a designated bench or rail in the processing area. (Note: This is for short-term use only, when

there is no detention room available or there is a compelling reason to keep the prisoner outside of the detention room.)

I. The arrestee shall be photographed and fingerprinted according to procedures established by the Patrol Branch Commander or the Field Office Commander. These procedures shall be approved by the Operations Division Commander and the Field Offices Division Commander, respectively.

2103.08 DETENTION OF AN ARRESTEE

A. An arrestee shall not be detained any longer than is reasonable and necessary for the circumstances surrounding the case. An officer shall not detain an arrestee for more than 3 hours unless he/she receives approval from the Shift Commander or Unit (e.g., CIB) Commander. An officer shall be guided by the procedures outlined in General Order 2108 "Mass Arrest Procedures" for mass arrest situations.

B. After the arrestee has been processed and the appropriate security measures have been taken, he/she shall be given the opportunity to communicate, as appropriate, with either Counsel of his/her choice or his/her next of kin, bondsman, or friend.

C. If no facilities are available in the holding area, a prisoner who needs personal relief shall be escorted to the nearest restroom by an officer of the same sex.

D. If necessary, handcuffs or another approved restraining device may be placed on the prisoner during confinement. Generally, a prisoner shall be restrained in an upright, seated position. If prone positioning of the prisoner is required, the prisoner must be closely and continuously monitored for breathing.

E. If it is determined that an arrestee should be released without charges, an adult shall be released in accordance with General Order 2105 "Release of an Arrestee." A juvenile shall be released in accordance with General Order 2110 "Juveniles." The appropriate Detention Journal entries shall be made.

2103.09 SPECIAL ARREST SITUATIONS

A. Off-duty Arrests

The Shift Commander shall be notified (through the appropriate communications section) as soon as possible after an off-duty arrest has occurred.

B. <u>Postal Employees</u>

When a U.S. Postal Service employee actively engaged in the transporting, carrying, or delivering of mail is arrested, the arresting officer's supervisor shall be notified and shall ensure that the closest Postal Inspector's Office is immediately contacted. The U.S. Postal Service shall then respond to take possession of any mail in the employee's possession.

C. <u>U.S. Armed Forces Personnel</u>

1. Whenever a member of the U.S. Armed Forces is arrested, the arresting officer's supervisor shall be notified and shall ensure that the appropriate military authority is notified according to Force procedures for the area in which the arrest was effected.

2. If the arrest is for Disorderly Conduct or another minor offense, the arresting officer may, with the concurrence of a supervisor, release the arrestee to the custody of the military in lieu of processing him/her through the civilian criminal justice system; however, the arresting officer shall first transport the arrestee to the processing facility. All required information shall then be placed in the arrest book, including a disposition entry of "TOT Military."

3. In the District of Columbia, all required information shall then be placed in the Criminal Justice Information System (CJIS); however, the Desk Officer must press "S" in the system for a 61D Release disposition, and make the notation "TOT military" in the comment section of the screen.

4. If the arrest is for a more serious violation, the officer shall process the arrestee as a civilian. The arrestee shall not be released to the custody of the military even if the arrestee is also AWOL or a deserter; however, the appropriate branch of the Armed Forces shall be notified.

5. If the arrest is for desertion only, the arrestee shall be processed as a civilian except that the arrestee shall be released to the custody of the military.

6. An officer who wishes to execute a warrant of arrest on a military reservation for a member of the U.S. Armed Forces shall first notify the base military police and request that the member's Commanding Officer be notified. Normally the member will be delivered except when military disciplinary action is pending against that member.

D. <u>Individuals Possessing Classified Material</u>

If an arrestee has possession of classified material, the officer shall immediately notify the Shift Commander (through the officer's immediate supervisor), who shall be responsible for safeguarding such material and notifying the affected Governmental department or agency.

E. <u>Members of the U.S. or Foreign Merchant Marine</u>

The arresting officer shall notify his/her supervisor, who shall ensure that the nearest Coast Guard Marine Inspection Office is notified immediately of any <u>drug-related</u> arrest of a U.S. or foreign merchant seaman.

F. <u>Diplomats</u>

Refer to General Order 2125 "Foreign Nationals."

G. <u>Members of Congress</u>

Refer to General Order 2130 "Congressional Immunity."

H. <u>Juveniles</u>

Refer to General Order 2110 "Juveniles."

I. <u>Arrests by Citizens</u>

1. An officer shall be knowledgeable of the laws pertaining to a citizen's arrest authority for his/her assigned jurisdiction.

2. In the event of an arrest by a citizen, the officer shall contact the Criminal Investigations Branch and make every effort to determine if the arrest was lawful or unlawful.

3. If the arrest is determined to be lawful, the officer shall:

   a. Arrange transportation for the citizen and the arrestee to the processing facility.

   b. Verify the identity of the citizen making the arrest.

   c. Process the arrestee as in any other arrest.

   d. Record the citizen as having made the arrest.

 

        e.      Attempt to get a written and signed statement of facts from the arresting citizen.

        f.      Submit a detailed report prior to the end of his/her tour of duty.

    4.    If the arrest is determined to be an unlawful arrest, the officer shall:

        a.      Advise the citizen involved that the arrest is not proper and that all concerned are free to leave.

        b.      Inform the Shift Commander (through the immediate supervisor).

        c.      Prior to the end of the tour of duty, submit a detailed report including all identities.

    5.    If the arrest occurs outside of Force primary jurisdiction, the officer shall request the primary police agency to respond. Upon the request of the agency with primary jurisdiction, control of the situation shall be maintained until officers from that agency arrive. A detailed report shall be submitted prior to the end of the officer's tour of duty.

J.    **Expired Operator's Permit**

    1.    When an officer stops a motor vehicle for a minor traffic violation and the operator of the motor vehicle exhibits a recently expired operator's permit, the officer:

        a.      May issue the operator a Notice of Infraction (Citation) for No Permit, or similar charge as applicable

        b.      Shall not summarily arrest the operator of the vehicle if it appears that the operator has, through oversight, allowed the permit to expire

    2.    An officer shall make a summary arrest for No Permit, or similar charge as applicable, when no operator's permit has been issued or the permit has been expired for more than 90 days.

K.    **White House Passholders**

Whenever a person who has been arrested for a criminal offense is, or claims to be, a White House passholder, the arresting officer shall notify the area Shift Commander as soon as possible, who shall then notify the

Washington, DC, Communications Section. The Communications Section supervisor shall then notify the duty agent of the United States Secret Service, Washington Field Office. If the Secret Service elects to respond to the processing facility, the Shift Commander or his/her designee shall also respond to serve as liaison. The Shift Commander shall note the incident on the Shift Summary Report and, if the circumstances of the incident warrant, notify the appropriate Force officials.

2103.10   **RESPONSIBILITIES**

    A.  Division Commanders shall ensure that the prisoner processing and temporary holding areas under their control are maintained in a clean and safe manner and are Force-approved by the Commander, Technical Services Branch, the Commander, Field Offices Division, or a designee.

    B.  Station and Field Office Commanders shall:

        1.  Ensure that contingency plans are made for the safety of prisoners in the event of a fire or a disorder. Copies of these procedures shall be forwarded to the Planning and Development Unit for review prior to distribution.

        2.  Ensure that the appropriate arrest, prisoner processing, and detention information is properly disseminated to officers in their command.

        3.  Ensure that each officer in their command complies with established procedures.

        4.  Ensure that officers report dispositions in a Supplementary Case/Incident Record (NPS Form 10-344) when received. A copy of this form shall be sent to the Desk Officer of the affected worksite.

    C.  Each Shift Commander shall ensure that security of the arrestee is provided during medical transport and treatment if the case involves an assault of a police supervisor.

    D.  Each supervisor shall:

        1.  Ensure that security of the arrestee is provided during medical transport and treatment if the case involves an assault of a police officer.

        2.  Ensure that all injuries sustained by an arrestee are photographed in color.

E. The Desk/Processing Officer shall:

1. Assist the arresting officer with the processing of the arrestee.

2. Ensure that all property is correctly processed.

F. If necessary, the assigned criminal investigator shall assist the arresting officer in preparing felony cases and, as appropriate, other cases.

Approved _____
Robert E. Langston, Chief of Police

**SUBJECT:**   Mass Arrest Procedures   **NUMBER:**   2108

 

## GENERAL ORDER

.01  POLICY
.02  GENERAL PROVISIONS
.03  MASS ARREST PROCEDURES
.04  PRISONER PROCESSING PROCEDURES
.05  RESPONSIBILITIES

2108.01   **POLICY**

The Force shall make every effort to anticipate situations that may result in mass civil disobedience and arrests. When these situations arise, whether preplanned or spontaneous, the Force shall take reasonable action to ensure the safety of the public and our officers, the protection of property, and the safe control of arrestees.

2108.02   **GENERAL PROVISIONS**

A.  In the event of a potential mass arrest situation, as much advance notice as possible shall be given to (1) any affected police agency or detention facility, (2) the Solicitor's Office, (3) the U.S. Attorney, and (4) any other affected judicial body or public service agency.

Note: In the District of Columbia, D.C. Pre-Trial Services and the Metropolitan Police Department Special Operations Division shall be notified.

B.  When planning and preparing for a mass arrest situation, the official in charge (OIC) shall endeavor to assign a sufficient number of officers for crowd, traffic, and prisoner control, and for prisoner processing. Personnel shall also be assigned to media relations, and the incident shall be videotaped for evidentiary purposes.

2108.03   **MASS ARREST PROCEDURES**

A.  Mass arrests shall not be effected until such time as the on-scene OIC, or a designee, has sufficient personnel to effectively arrest and control the situation. Once it has been determined that violations are being committed, the area shall be closed down and no one allowed inside once any warnings are given. All arresting officers should be positioned

so they can hear the warnings if necessary. If needed, an arresting officer(s) should be positioned in the rear of the crowd so the officer(s) can hear the warnings. The crowd shall then be advised, using public address equipment, that they (the group) are in violation of a specified law and will be arrested if they do not disperse or cease their illegal activity. The warning shall be repeated three times, with approximately 2 minutes between each warning, to give those who choose not to be arrested time to leave the immediate area. If recorded, a dispatcher shall be asked to give a time check prior to issuing the first warning. For violent or emergency situations, or for individual acts of crime when arrests should be made as quickly as possible, the above procedures need not be followed.

SAMPLE WARNING: Attention. This is _____ of the United States Park Police. Because you are in violation of regulations applicable to this area, your permit to demonstrate on _____ is revoked. You must leave _____ now. All persons remaining will be arrested. (This is your final warning. ADD TO LAST WARNING ONLY.)

The ranking U.S. Park Police supervisory official in charge is the only one authorized to revoke a permit. This official needs to be identified for court purposes.

B. At the direction of the OIC, arrest teams shall be used to effect arrests. If buses are utilized, the following personnel should be assigned to each bus: 1 Sergeant, 1 male and 1 female prisoner control officer, and 4 arresting officers. One officer from each team shall initially be designated to make arrests. Each officer shall advise the arrestee that he/she is under arrest. When an officer has made 10 arrests, a second officer from the team shall make additional arrests, if necessary. After each officer has made 10 arrests, another arrest team shall be used. If less than 10 arrests are made, they shall be given to one officer. This procedure shall be determined by the OIC. As the officers make arrests, their prisoners shall be taken to a predesignated area.

C. Each arrestee and the immediate area (within legal constraints) shall be searched for evidence, weapons, or contraband. To secure the arrestee, flexi-cuffs or other Force-approved restraint devices shall be used. The name and badge number of the arresting officer and the assigned number of each prisoner (01, 02, 03, etc.) shall be recorded on a plastic band or other method of identification. This band shall normally be placed on the arrestee's right wrist. Except in exigent circumstances, male and female arrestees shall be searched by an officer of the same sex as the arrestee. This does not preclude a "pat-down" (Terry-type) frisk being conducted by an officer of the opposite sex, for safety purposes.

D. The OIC shall assign a field processing team to assist the arrest teams as follows:

1. One officer shall prepare the appropriate field arrest form and add the mass arrest number of the prisoner to the arrestee's plastic band and to the field arrest form.

2. One officer shall take an immediately developed picture of the arresting officer with that officer's prisoner. The arresting officer shall always pose to the prisoner's right, to avoid mistaken identity. The name and badge number of the arresting officer and the number of the prisoner shall be recorded on the back of the photograph in the lower left-hand corner; the arrestee's name shall be recorded in one of the upper corners. If the arrestee is a John/Jane Doe, so indicate. For photographing juveniles, refer to Section 04.D of General Order 2110 "Juveniles." If the arrestee has valid identification (photo type), place the identification card in the small envelope provided in the arrest kits and staple the envelope to the field arrest form. If the arrestee has no identification, state so on the top of the field arrest form. The arresting officer should be given all paperwork pertaining to the arrest.

3. The arresting officer shall prepare an Evidence/Property Control Receipt (USPP Form 43-11) for the arrestee's property/evidence and shall sign the form as the assigned/reporting officer. The arresting officer shall also ensure the safeguard/transport of any property/evidence.

4. Barring unusual circumstances, one case number shall be assigned to each event.

E. After adult arrestees have been searched and photographed, they shall be transported to the designated prisoner processing facility by the most direct route under existing conditions. When a bus is used, a minimum of two transport control officers shall be assigned to each bus. When prisoners are put into the bus, each arresting officer's prisoners should sit together in one predetermined area of the bus. The supervisor assigned to the bus shall ensure that all arresting officers, necessary paperwork, and evidence/property are on board prior to the transport. After juveniles have been searched, they shall be transported to the processing facility separate from adult arrestees.

>           Note: In the District of Columbia, the Anacostia Operations Facility
>           (AOF) shall be the designated processing facility. The Central District
>           Station can be used as the second site. An officer shall follow the
>           procedures as outlined in the mass arrest policy contained within the
>           respective Station policy manual.

2108.04    PRISONER PROCESSING PROCEDURES

   A.   Once inside the facility, the arresting officer shall report to the
        designated facility supervisor. A supervisor shall direct the searching
        and processing of arrested persons at each facility. All weapons shall
        be secured according to established procedures. If available, there shall
        also be at least one female officer and one Identification Unit technician
        at each facility.

   B.   Upon arrival at the appropriate processing facility, a second search of
        each arrestee shall be conducted prior to proceeding to the processing
        area. The name of any officer (other than the arresting officer) who
        searches an arrestee and handles property/evidence shall be placed on
        the appropriate property form, to ensure the proper chain of custody.
        Any property and/or evidence from the initial search and the secondary
        search shall be released to the designated property control officer of the
        processing facility for safeguarding in accordance with existing
        procedures (see General Order 3211 "Evidence/Property").

   C.   Field arrest photographs and field arrest forms shall be handed to the
        booking officer, who shall retain them until each group of prisoners has
        cleared the processing area. The photographs shall be included in an
        arrest folder along with the appropriate processing forms. The booking
        officer shall be responsible for recording the appropriate arrest book
        entries for each arrestee. Once booked, the arrestee shall be turned
        over to the prisoner processing officers.

   D.   During processing, the arresting officer shall prepare any case jackets,
        reports, and CFR tickets (if applicable).

   E.   Each arrestee shall be advised of the available methods of release.

   F.   All adult arrestees shall be photographed and fingerprinted. All
        required reports and FBI fingerprint cards, including the green Final
        Disposition Report (R-84), shall be prepared prior to the end of the
        detail.

      G.    All processed arrestees not released may be detained until enough arrestees have been processed to fill a transport vehicle. Prisoners shall not be detained unreasonably. The arrestees shall then be transported to the appropriate detention facility. Prisoner control officers shall deliver all necessary completed forms to that facility. When necessary, arresting officers shall serve as control officers during the processing procedures and subsequent transport to the detention facility.

      H.    After all prisoners have been transported to either a detention facility or court, the booking process shall be completed from information on the prosecution report or the preliminary arrest report.

2108.05    **RESPONSIBILITIES**

      A.    The Commander, Operations Division/Field Office Commander shall ensure that:

          1.    Scheduled events are preplanned, with sufficient personnel and operational briefings to control foreseeable civil disobedience.

          2.    Locations and logistics for mass arrest processing have been prearranged, including coordinating joint operations with affected jurisdictions.

          3.    Pertinent intelligence information is distributed in advance of the event.

          4.    Personnel are on-scene for investigations, photographs, property control, and prisoner processing.

          5.    Mass arrest kits are available. These kits shall contain Force-approved restraining devices, latex gloves, plastic wrist bands, Polaroid cameras with film, and field arrest, property, and evidence forms.

      B.    The Commander of each prisoner processing facility shall ensure that a mass arrest plan is developed for the facility.

      C.    As circumstances permit, the Commander, Office of Inspectional Services/Field Office Commander shall assign personnel to media relations duties.

      D.    As circumstances permit, the Training Branch/Field Office Commander shall assign personnel to operate video equipment.

E.  In mass arrest situations, the OIC of prisoner processing shall be responsible for notifying the Shift Commander and the appropriate detention facility when such arrests cannot be processed within the 3-hour time constraint. These notifications shall be made as soon as it becomes apparent that the 3-hour limit will be exceeded. The OIC of prisoner processing is also responsible for ensuring that all reports, case jackets, and citations (if applicable) are completed as required.

Managers and supervisors must consider the potential risk of civil disobedience in their plans for scheduled events. However, should unexpected civil disobedience occur, the OIC must consider all available resources and coordinate to the extent possible any arrest, prisoner processing, or prisoner control situations.

Approved _____
Robert E. Langston, Chief of Police