UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JEFFREY BARHAM, *et al.*, | : | |
| Plaintiffs, | : | |
| v. | : | Civ. Action No. 02-02283 (EGS) (AK) |
| CHARLES H. RAMSEY, et al., | : | |
| Defendants. | : | |

**DISTRICT OF COLUMBIA DEFENDANTS' MEMORANDUM
OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS'
SUPPLEMENT REGARDING APPLICABILITY OF *GROH v. RAMIREZ***

Defendants, District of Columbia ("District"), Mayor Anthony A. Williams, and Chief Charles H. Ramsey (collectively, "District Defendants"), respectfully submit this memorandum in response to plaintiffs' supplemental memorandum ("Pl. Supp.") regarding the applicability of *Groh v. Ramirez*, ___U.S. ___, 124 S. Ct. 1284 (2004) to this matter. The *Groh* decision was the U.S. Supreme Court's second decision significantly informing Fourth Amendment probable cause jurisprudence since the November 25, 2003 hearing in this matter. In *Groh*, the Supreme Court discussed the application of qualified immunity in the context of a facially invalid search warrant. On December 15, 2003, the Supreme Court had decided *Maryland v. Pringle*, ___ U.S. ___, 124 S.Ct. 795 (2003). In *Pringle*, the Supreme Court explained probable cause requirements in the context of an arrest. (Assistant Chief Newsham called the attention of the Court to the *Pringle* decision on December 17, 2003. *See* Docket Entry No. 90.) As explained below, *Groh*, read in harmony with *Pringle*, demonstrates that Mayor

Williams and Chief Ramsey are entitled to qualified immunity from liability for plaintiffs' arrests.

**_Maryland v. Pringle_,      U.S.     , 124 S.Ct. 795 (2003)**

In *Pringle*, the U.S. Supreme Court reversed a decision of the Court of Appeals of Maryland and upheld the conviction of respondent Joseph Pringle for possession of cocaine and possession with intent to distribute cocaine. 124 S. Ct. at 799. Pringle was a passenger in a car driven by Donte Partlow, at 3:16 a.m. on August 7, 1999, when a Baltimore County Police Officer stopped Partlow for speeding. In responding to the officer's request to see his license and registration, Partlow opened the car's glovebox, revealing a large amount of rolled-up money. *Id.* at 798. After determining that Partlow had no outstanding violations, the officer issued Partlow a verbal warning for speeding. The officer also asked Partlow whether Partlow had any weapons or narcotics in the car.

Partlow told the officer that he did not have any weapons or narcotics in the car and consented to having the car searched. *Id.* The officer found $763 in the glovebox and five glassine baggies of cocaine located between the back-seat armrest and the back seat. *Id.* The officer questioned Partlow, Pringle, and the car's third occupant about the ownership of the money and the drugs. *Id.* The officer further stated that if none admitted owning the drugs and money, he would arrest them all.

The three occupants provided no information, and the officer arrested them all. Subsequently, Pringle confessed that the cocaine was his. Thereafter, Pringle moved to suppress his confession, arguing that the officer lacked probable cause to have arrested him. *Id.* at 799. The trial court denied the motion. The Maryland Court of Special Appeals affirmed. However, the Court of Appeals of Maryland reversed. That court held

"that, absent specific facts tending to show Pringle's knowledge and dominion over the drugs, 'the mere finding of cocaine in the back armrest when [Pringle] was a front seat passenger, in a car being driven by its owner is insufficient to establish probable cause for an arrest for possession.'" *Id.* at 799 (quoting *Pringle v. Maryland*, 370 Md. 525, 545, 805 A.2d 1016, 1017 (2002)).

The U.S. Supreme Court identified "[t]he sole question" upon which the case turned to be "whether the officer had probable cause to believe that Pringle had committed th[e] crime." *Id.* In arriving at its answer, the Supreme Court observed that "'[p]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* at 800 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide '[w]hether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

The Court recited these as the pertinent facts: Pringle was one of three men in the car at 3:16 a.m.; there was $763 in cash in the glovebox directly in front of him; five baggies of cocaine were behind the back-seat armrest and accessible to all three of the car's occupants; and the three men failed to offer any information regarding ownership of the drugs or the money. *Id.* Additionally, the Supreme Court criticized the Court of Appeals for having considered the money as innocuous "in isolation." *Id.* at n.2. Instead, the money should have been viewed as a factor in the totality of the circumstances under which probable cause was to have properly been assessed. *Id.* at n.2 (in part, quoting

*Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) stating, "[p]robable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief' that an offense has been or is being committed."). Upon that analysis, the Supreme Court deemed it "an entirely reasonable inference" that any or all three of the car's occupants exercised dominion and control over the drugs. That, in turn, made it a reasonable conclusion that probable cause existed for the officer to believe that Pringle "had committed the crime of possession of cocaine, either solely or jointly." *Id.* at 800-01.

The Supreme Court further dismissed Pringle's argument that his case was one of guilt-by-association. The Court distinguished the cases of *Ybarra v. Illinois*, 444 U.S. 85 (1979) and *United States v. Di Re*, 332 U.S. 581 (1948), cited by Pringle to support his argument. In *Ybarra*, police officers obtained a search warrant to search a tavern and a particular bartender in that tavern, based upon evidence of heroin dealing in the tavern and by that bartender. 444 U.S. at 87-88. In executing the warrant, the officers conducted a patdown search of Ybarra, which yielded a pack of cigarettes that contained packets of heroin. *Id.* at 88-89; *Pringle* at 801. The Supreme Court held that the police lacked probable cause to search Ybarra when the warrant issued. *Ybarra* at 90-91. Moreover, Ybarra's conduct while the officer's were executing the warrant did not give rise to probable cause for his search or even to support a frisk under *Terry v. Ohio*, 392 U.S. 1 (1968). *Ybarra*, at 92-94. The Court stated that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91 (citation omitted).

The Supreme Court stated that its *Pringle* case is "quite different from *Ybarra*." *Pringle*, at 801. In distinguishing *Pringle* from *Ybarra*, the Supreme Court has cast new light upon the process of determining the existence of probable cause sufficient to arrest one or more individuals in a group, where circumstances support a reasonable belief that a number of persons gathered together have jointly committed an offense.[1]

In *Di Re*, a federal investigator had received a tip from an informant that the informant was to receive counterfeit gasoline ration cards from an individual named Buttitta at a certain location. The investigator went to the designated place and found the informant sitting in the back-seat of a car with Buttitta and Di Re in the front seat. The informant had the counterfeit ration cards, which he told the investigator he had received from Buttitta. The investigator arrested and searched all three men.

In that case, the Supreme Court observed that the investigator had no information implicating Di Re or indicating that Di Re had possessed the coupons, "unless presence in the car warranted that inference." *Id.* at 801. In holding that the investigator lacked probable cause for Di Re's arrest, the Supreme Court stated, "'[any] inference that everyone on the scene of a crime is a party to it *must disappear if* the Government informer singles out the guilty person.'" *Id.* (quoting *Di Re*, 332 U.S. at 594) (emphasis added).

In *Pringle*, the Supreme Court stated that "[n]o such singling out" had occurred in the context of Pringle's arrest. Therefore, the officer had probable cause to support

---

[1] *Pringle*, thus, casts a new light upon the constitutional underpinnings of the measures required to effectuate a mass arrest in accordance with *Dellums v. Powell*, 184 U.S. App. D.C. 275, 566 F.2d 167 (D.C. Cir. 1977). Moreover, *Pringle* casts new light upon the applicability of those measures in this case, where the Pershing Park arrests were based upon acts committed before the persons arrested came to be assembled in the Park.

5

Pringle's arrest, and that arrest conformed to the requirements of the Fourth Amendment. *Id.* at 802.

**<u>Groh v. Ramirez,     U.S.     , 124 S. Ct. 1284 (2004)</u>**

As discussed in Pl. Supp., Bureau of Alcohol, Tobacco and Firearms agent Jeff Groh prepared an application for a search warrant (with supporting affidavit) and a search warrant form to conduct a search for weapons at the residence of the Ramiriezes. Pl. Supp. at 2; 2004 LEXIS 1625 at [*6] – [*7]. A Magistrate Judge signed that warrant form. *Id.* at [*7]. Groh then instructed a team of federal agents and officers of the local sheriff's office regarding the search that was to ensue based upon the flawed warrant. *Id.* at [*29] – [*30] (Stevens, J., dissenting).

Following the search of his house and grounds in a manner consistent with the affidavit, Ramirez sued Groh and the members of his search team pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Id*. at [*10]. That suit alleged eight claims, including a Fourth Amendment violation. *Id.* The District Court granted all defendants summary judgment. That court reasoned that the error in the warrant was akin to an address error and that the warrant was sufficiently detailed to satisfy Fourth Amendment requirements so long as the officers could identify the correct house from the warrant. *Id.* at [*10]. Moreover, the District Court held that Groh and his team were entitled to qualified immunity, even if the warrant did not meet Fourth Amendment requirements. *Id.*

The Ninth Circuit Court of Appeals affirmed entry of summary judgment as to all of the officers except Groh. *Id.*; *see also Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027-28 (9th Cir. 2002). The Court of Appeals held that the search had violated the

Ramirezes' Fourth Amendment rights, but that all the participating officers, except Groh, were entitled to qualified immunity. The Court recognized that "[l]aw enforcement officers are entitled to qualified immunity if they act reasonably under the circumstances, even if the[ir] actions result in a constitutional violation." *Ramirez*, 298 F.3d at 1027 (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). The officers, other than Groh, were entitled to rely upon Groh's representations regarding the nature and scope of the warrant. *Ramirez* at 1028. The reasoning of the Ninth Circuit in this regard is entirely consistent with the pronouncements of the U.S. Supreme Court in *Beck v. Ohio*, 397 U.S. 89, 91 (1964), and *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949): that a police official may reasonably rely upon trustworthy information, rather than personal knowledge, as probable cause for arrest.

In this case, Chief Ramsey's actions regarding plaintiffs' arrests were premised upon the information that he was provided by Assistant Chief ("A/C") Newsham. Chief Newsham believed that he had probable cause to arrest the persons in Pershing Park without giving them a direction to disperse from the Park, based upon their conduct that he had observed or which was reported to him by other Metropolitan Police Department ("MPD") officials and officers.

**Applying *Groh* and *Pringle* to This Case**

Pursuant to *Groh*, as had been and continues to be true under *Beck* and *Brinegar*, Chief Ramsey complied with Fourth Amendment requirements in querying A/C Newsham and relying upon the Assistant Chief's observations and information. Certainly, it was not clearly established as of September 27, 2002, that it would be a Fourth Amendment violation for him to do so. *See Beck*, 397 U.S. at 91; *Brinegar*, 338

U.S. at 175-76. In relying upon A/C Newsham's account, Chief Ramsey was not presented with a "Government informer [who] single[d] out the guilty person.'" *See Pringle*, 124 S.Ct. at 801 (quoting *Di Re*, 332 U.S. at 594). Just the contrary was true.

The information provided by his Assistant Chief was that probable cause existed to arrest everyone in Pershing Park for a variety of charges, based upon their conduct prior to entering the Park. The offenses committed by persons before they entered Pershing Park, which A/C Newsham believed provided probable cause for their arrests in the Park, were not cured by the fact that those persons gathered without a permit in the Park. For that reason, among others, this case is not controlled by *Dellums v. Powell*, 184 U.S. App. D.C. 275, 566 F.2d 167 (D.C. Cir. 1977). Therefore, *Dellums* did not clearly establish the contours of Fourth (or First) Amendment rights applicable to this case. Accordingly, if this Court were to determine that plaintiffs' assertions, viewed most favorably to plaintiffs, could make out a Fourth Amendment claim against Chief Ramsey or Mayor Williams, both officials would be entitled to summary judgment upon qualified immunity grounds upon proper application of *Groh* and *Pringle*.

    Respectfully submitted,

    ROBERT J. SPAGNOLETTI
    Corporation Counsel

    GEORGE C. VALENTINE
    Deputy Corporation Counsel
    Civil Litigation Division

    /s/ Richard S. Love
    RICHARD S. LOVE [400445]
    Section Chief
    Equity Section I

        /s/ Thomas L. Koger
        THOMAS L. KOGER [427921]
        Senior Litigation Counsel
        441-4th St., N.W., Sixth Floor South
        Washington, D.C. 20001
        (202) 724-6610

        Attorneys for Defendant
        District of Columbia, Mayor Anthony A.
        Williams and Chief Charles H. Ramsey

## Certificate of Service

I hereby certify that on the 1st day of April 2004, I caused a true copy of the foregoing corrected DISTRICT OF COLUMBIA DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO PLAINTIFFS' SUPPLEMENT REGARDING APPLICABILITY OF *GROH v. RAMIREZ* to be filed electronically with the Court for electronic service upon:

| | |
|---|---|
| Carl Messineo, Esquire | Robert E. Deso, Esquire |
| Mara Verheyden-Hillard, Esquire | DESO, THOMAS, BUCKLEY |
| Partnership for Civil Justice | & STIEN, P.C. |
| 1901 Pennsylvania Avenue, NW | 1828 L Street, N.W., Suite 600 |
| Suite 607 | Washington, DC 20036 |
| Washington, D.C. 20006 | |

Marina Utgoff Braswell
Edith Marguerita Shine
United States Attorney's Office
555 Fourth Street, NW
Washington, D.C. 20004

        /s/ Thomas L. Koger
        THOMAS L. KOGER