UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JEFFREY BARHAM<br>    et al.,<br><br>        Plaintiffs,<br><br>CHARLES RAMSEY,<br>    et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>) Case No.: 02-CV-2283 (EGS)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' SUPPLEMENT TO MOTION FOR ATTORNEY'S FEES

Plaintiffs Nicole Barham, Laury Saligman, Brian McAteer and Miles Swanson hereby submit their supplementation in support of the May 22 judgment order which provided that each is to be awarded "reasonable attorney's fees as determined by the Court."

The lodestar value of plaintiffs' attorneys' fees is $227,287.70 with expenses of $2,809.14.

**I. Calculation of Fees and Expenses**

The above-stated figure includes compensation for counsel at a reasonable hourly rate, as well as reimbursement for those legal expenses that are ordinarily compensable as a component of attorney's fees under 42 U.S.C. §1988(b).  Compensable attorneys' fees are determined by calculating the lodestar amount, which is the number of hours reasonably expended on the litigation multiplied by a reasonable rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

**A. Hours Reasonably Expended**

Plaintiffs have staffed this litigation appropriately and reasonably. See Exhibit 1A.

1

Plaintiffs present in this fee petition only those fees for services attributable to the claims of the four settling plaintiffs who were arrested at Vermont & K Streets. Plaintiffs have not presented herein fees for services that were expended exclusively or primarily due to the class action component of this litigation. For example, only those depositions (and related services) that are directly related to the Vermont & K arrests are included in the fee petition. The resulting fee petition is eminently fair and reasonable.

**B. Reasonable Rate**

"A fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience and reputation; and the prevailing market rates in the relevant community." Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

The requested market rate is presumed to be reasonable once plaintiff has established these three elements.  See Trust of Hotel & Rest. Emp. Loc. 25 v. Madison Hotel, 43 F. Supp.2d 8, 12 (D.D.C. 1999).

"Once the fee applicant has provided support for the requested rate, the burden falls upon the Government to go forward with evidence that the rate is erroneous.  And when the Government attempts to rebut the case for a requested rate, it must do so by equally specific countervailing evidence."  Covington, 57 F.3d at 1109; See also Lans v. Dell Computer Corp., Civil Action Nos. 97-2526 and 99-3153 (D.D.C. 2005) (JGP), September 30, 2005 Memorandum Opinion (billing rate is presumed reasonable if it is in line with prevailing market rates); Watkins v. Vance, 328 F. Supp.2d 23, 26 (D.D.C. 2004)(once showing is made the rate is presumed reasonable and the burden shifts to the defendants to rebut through "*specific contrary evidence*")

(emphasis in original); Madison Hotel, 43 F. Supp.2d at 12 (D.D.C. 1999) (defendants must present "specific contrary evidence").

"As the court of appeals has emphasized, in constitutional litigation, successful plaintiffs' counsel are presumed to be entitled to fees for all time reasonably expended, and the obligation to award a fully compensatory fee yields only to 'special circumstances [that] would render such an award unjust.'" Palmer v. Rice, 2005 U.S. Dist. LEXIS 13677, citing, Turner v. District of Columbia Bd. of Elections and Ethics, 354 F.3d 890, 895 (D.C. Cir. 2004).

### i. The First Covington Element is Met; Plaintiffs' Counsel Has Provided Legal Services to Plaintiffs Without Charge to Plaintiffs in Order to Advance Non-Economic and Public-Spirited Goals

The first element of the three Covington factors is clearly met by plaintiffs' counsel, which has engaged in this litigation without any charge to plaintiffs, for expenses or fees, in order to advance non-economic and public-spirited goals. See, Blackman v. District of Columbia, 59 F.Supp.2d 37, 43 (D.D.C. 1999) (where plaintiffs' counsel is a public interest group that does not ordinarily bill its clients at full rates, plaintiffs meet this element by satisfying the standards for public-spirited litigation set forth in Save Our Cumberland Mountains and Covington v. District of Columbia); See also, Sexcius v. District of Columbia, 839 F.Supp. 919, 922 (D.D.C. 1993) (quoting Save Our Cumberland Mountains, 857 F.2d at 1517).

Affidavits from counsel are sufficient to make a finding of public-spirited motivation. Madison Hotel, 43 F. Supp.2d 8, 13 (D.D.C. 1999), citing Covington v. District of Columbia, 57 F.3d 1101, 1110 n.19 (D.C. Cir. 1995); See also Martini v. Federal Nat. Mortg. Ass'n, 977 F.Supp. 482, 486 (D.D.C. 1997) (affidavit attesting to public spirited motivation sufficient).

Plaintiff's counsel's law firm, the Partnership for Civil Justice (PCJ) is a not-for-profit public interest organization.  The PCJ was expressly created to provide services to victims of civil and constitutional rights violations including those who would not otherwise be able to secure adequate representation, such as the plaintiffs in this case.  The PCJ provides legal representation to serve non-economic and public-spirited goals.  See Exhibit 1, Affidavit of Messineo at ¶¶4-12.

Absent counsel at the Partnership for Civil Justice, it is unlikely that there would be any remedy or accountability for the mass false arrest of plaintiffs.  The public interest lies in the vindication of constitutional rights violations by public officials and police, and the public also benefits generally from the deterrent effect that such litigation has.

The PCJ has not required any payment from plaintiffs, not for fees or expenses, during the pendency of the matter.  Id. at ¶6.

"The appropriate hourly rate for public interest legal service organizations and for-profit firms engaged in public interest work is the prevailing market rate."  Judicial Watch, Inc. v. Dept. of Commerce, 384 F. Supp. 2d 163, citing Northwest Coalition for Alternatives to Pesticides v. Browner, 965 F.Supp. 59, 65 (D.D.C. 1997), which itself cited Save Our Cumberland Mountains; See also Bolden v. J & R Inc., 135 F. Supp.2d 177, 179 (D.D.C. 2001) ("Attorneys who do not charge a billing rate, such as those employed with non-profit or public interest groups, may be compensated at the hourly" market rates reflected in the Laffey Matrix).

Hourly rates for "reasonable fees" are to be determined by "prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."  Blum v. Stenson, 465 U.S. 886, 895 (1984); See also Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C. Cir. 1988);" Covington v. District of Columbia,

4

57 F.3d 1101 (attorneys who customarily charge reduced fees reflecting non-economic public spirited goals may seek fees based on the prevailing market rate).

The appropriate market rates are identified and established in subsection iii, below.

**ii. The Second Covington Element - Counsels' Skill, Experience and Reputation**

The second Covington element is recognized as being intertwined with the third. The second element requires plaintiffs to establish counsels' skill, experience and reputation so the Court may evaluate whether the requested rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Covington 57 F.3d at 1108, citing, Blum at 896 n.1.

Undersigned counsel has established this element.

Mr. Messineo and Ms. Verheyden-Hilliard are the co-founders of the Partnership for Civil Justice, Inc., which was founded in 1994 to advance and vindicate violations of civil rights and constitutional rights. See Exhibit 1, Messineo Aff. at 1-2 ¶ 4-5. Their work focuses substantially on complex federal litigation of cases with the same nature as the instant case, i.e., claims of First and Fourth Amendment violations committed by law enforcement against protestors or political activists. Id. at 3-4 ¶ 14.

Mr. Messineo is also counsel, along with Ms. Verheyden-Hilliard, in Alliance for Global Justice, et al. v. District of Columbia, et al, Civil Action No. 01-CV-0811 (PLF) in which claims of false arrest and demands for expungement of derived intelligence records are advanced on behalf of approximately 700 individuals who were arrested in a mass false arrest timed with the April, 2000 IMF/WB Spring Meetings. Id. at 4 ¶ 14b.

Ms. Verheyden-Hilliard and Mr. Messineo represented plaintiffs challenging limitations on protest in New York's Central Park, with The City of New York Department of Parks and

Recreation stipulating to an injunction against enforcement of a regulation limiting protest on Central Park's Great Lawn.  See National Council of Arab Americans, et al. v. City of New York, et al., Civil Action No. 4-06602 (United States District Court, Southern District of New York).  That case was successfully resolved in favor of plaintiffs, as recently reported favorably in the media. See, e.g., New York Times editorial board, *A Step Toward a Free Great Lawn,* The New York Times, January 11, 2008; Alan Feuer, *Settlement on Use of Central Park's Great Lawn,* The New York Times, January 8, 2008;

      Mr. Messineo and Ms. Verheyden-Hilliard are co-counsel in Killmon, et al v. City of Miami, et al., Case No. 4-20707, (United States District Court for the Southern District of Florida, Miami Division), in which claims of false arrest and demands for expungement of derived intelligence records are advanced on behalf of those who were arrested in mass false arrests timed with the 2003 Free Trade of the Americas Act.

      Ms. Verheyden-Hilliard was lead counsel, and Mr. Messineo provided briefing assistance, in the Partnership for Civil Justice's successful efforts to strike down the City of Philadelphia's unconstitutional permitting system regulating First Amendment activity.  See International Action Center v. City of Philadelphia, Civil Action 1-2217 (United States District Court for the Eastern District of Pennsylvania).  Id. at 4 ¶ 14h.

      Currently, Mr. Messineo and Ms. Verheyden-Hilliard are lead counsel or lead co-counsel in multiple complex federal litigation cases in which the claims are law enforcement violations of the First and Fourth Amendment rights of persons engaged in, or associated with, demonstrations.  See, ANSWER Coalition, et al. v. Gale Norton, Civil Action No. 5-00071 (PLF) (challenging First Amendment violations in connection with the restriction of speech in connection with the 2005 Presidential Inauguration Parade); Frucht, et al. v. District of

Columbia, Civil Action No. 4-599 (challenging First and Fourth Amendment violations in connection with April, 2003 protest); Bolger, et al. v District of Columbia, et al., Civ. Action No. 03-906 (challenging First and Fourth Amendment violations in connection with April, 2002 protest); International Action Center, et al. v. United States of America, et al., Civil Action No. 01-00072 (challenging First and Fourth Amendment violations of protestors in connection with the 2001 Presidential Inauguration).  Id. at 4 ¶ 14c-g.

Mr. Messineo was graduated from the University of Pennsylvania Law School in May, 1994.  Ms. Verheyden-Hilliard was graduated from Columbia University Law School in May, 1994.  They are each admitted to practice in New York State and the District of Columbia.  Each is also admitted to practice in the following federal courts: U.S. Supreme Court, U.S. Court of Appeals for the District of Columbia Circuit, U.S. District Court for the District of Columbia, U.S. District Court for the Southern District of Maryland, U.S. District Court for the Eastern District of New York, and the U.S. District Court for the Southern District of New York.  Exhibit 1 at 5 ¶15.

Both Mr. Messineo and Ms. Verheyden-Hilliard have appeared and argued as lead counsel before both the D.C. Circuit and the District of Columbia Court of Appeals.  They each have also been admitted *pro hac vice* in the United States District Court, Southern District, Florida in the constitutional rights litigation stemming from the mass false arrests and other constitutional violations in connection with the November, 2003 Free Trade of the Americas Act meetings and demonstrations.  Id. at 4 ¶ 14c; 6 ¶ 16.

The work of the PCJ and that of its two co-founders are routinely interviewed in print media and on television and radio on the subject of constitutional rights and civil liberties, reflecting a well established reputation.[1]

In the context of the case at hand, the matter has required representation by experienced counsel familiar with the applicable constitutional frameworks. In particular, a significant element in the success of the four settling plaintiffs was the presentation by plaintiffs' counsel of legal theories related to the unlawful nature of arrests for parading without a permit (an issue not previously litigated within this Court) as well as to the constitutional use of police authority in

---

[1] Articles are one means of establishing reputation.  See e.g., Michael A. Ruane, *The Battle to Remold the* Mall, The Washington Post, January 20, 2008, C1; New York Times editorial board, *A Step Toward a Free Great Lawn,* The New York Times, January 11, 2008; Alan Feuer, *Settlement on Use of Central Park's Great Lawn,* The New York Times, January 8, 2008; Larry Neumeister, *Groups Say Central Park's Great Lawn May Be Opened to Big Rallies,* Associated Press, January 8, 2008; Rick Weiss *Dragonfly or Insect Spy? Scientists at Work on Robobugs*, Wash. Post, Oct. 9, 2007, at A03; Jenna Johnson, *Anti-War Group Sues City Over Laws on Signs*, Wash. Post, Aug. 21, 2007, at B04; Carol Leonnig, *Police Log Confirms FBI Role in Arrests – Group Detained, Questioned, During DC War Protest*, The Washington Post, April 3, 2007; David Montgomery, *Stirring a Cause: When Things Get Rough for Protestors, These Lawyers Go On the March*, The Washington Post, May 12, 2003, at C01; Debbi Wilgoren, *Protesters Win Ruling on D.C. Arrests: Assistant Police Chief Can Be Liable for Damages, Federal Appeals Court Says*, Wash. Post, Jan. 14, 2006, at B06; Lily Henning, *Civil Rights, Terrorism Cases on Circuit Slate*, Legal Times, Sep. 5, 2005; Carol D. Leonnig & Del Quentin Wilber, *D.C. Settles with Mass Arrest Victims: 7 Rounded Up in 2002 IMF Protest to Get $425,000 and an Apology*, Wash. Post, January 25, 2005, at A01; David A. Fahrenthold & Manny Fernandez, *D.C. Officer on Desk Duty After Allegedly Hitting Protestor*, Wash. Post, Apr. 15, 2003, at B02; *G-8 Accuse Police of Spying*, Associated Press, May 5, 2004; *Georgia Passes Law Limiting Protests*, Associated Press, Apr. 18, 2004; *Lawsuit Challenges Permit Rejection*, Associated Press, Aug. 13, 2004; Manny Fernandez & David A. Fahrenthold, *Protesters and Other Arrested File Suit Against Police, District: Plaintiffs Say They Were Detained Without Cause, Abused*, Wash. Post, Nov. 20, 2002, at A12; Arthur Santana, *At Hearing, D.C. Police Faulted on Mass Arrests*, Wash. Post, Dec. 18, 2003, at B03; Carol Leonnig, *Public Space Along Parade Route at Issue*, Wash. Post, Jan. 20, 2005, at A09; Top Headlines, *Counter-Inaugural Revving Up: Dozens of Groups Converge on Washington for Protests*, CNN News, Jan. 18, 2005; Alan Wirzbicki, *Protesters Seek More Inauguration Permits; Accuse Government of Blocking Them Out*, Boston Globe, Dec. 15, 2004; David Montgomery, *Lawyers Allege Abuses By Inaugural Security*, Wash. Post, Mar. 16, 2001, at A08; Christian Parenti, *DC's Virtual Panopticon*, Nation, Jun. 3, 2002; *Police and Organizers Expecting Huge Crowds for Saturday Protest*, Associated Press, Oct. 21, 2003.

the context of First Amendment protected activity. The success of the settling plaintiffs was exceptional, as reflected both in the securing of $50,000 in monetary compensation per each settling plaintiff (which exceeds that recovered for individual class representatives and class members in the Burgin / Diamond class action) as well as in the securing of important equitable relief. The settlement of this case provides that the MPD mass demonstration handbook provide written notice to officers that arrests for parading without a permit are unlawful, as well as notice of new and relevant requirements imposed by the First Amendment and Police Standards Act of 2004. Modifications to training courses are also required. Additionally, those MPD officers who are assigned to the Special Operations Division are now required to be issued specific guidance in appropriate legal standards for mass demonstrations and to execute a written acknowledge of the receipt of such guidance, which is to remain in training files for no less than three years. These are important steps to achieve training and accountability.

### iii. The Third Covington Element - Prevailing Market Rates

"In order to demonstrate this third element, plaintiffs may point to such evidence as an updated version of the Laffey Matrix . . . ." Covington, 57 F.3d at 1109. Plaintiffs submit an Updated Version of the Laffey Matrix as adjusted for inflation using the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.  According to the Updated Laffey Matrix, prevailing market rates for Washington, D.C. federal litigators are:

| **Experience** | **Rate** |
|---|---|
| 20+ years | $645 |
| 11 - 19 years | $536 |
| 8 - 10 years | $475 |
| 4 - 7 years | $329 |
| 1 - 3 years | $268 |
| Paralegals | $146 |

See Exhibit 4, Declaration of Michael Kavanaugh, at ¶ 15.

The Declaration of expert economist Michael Kavanaugh in support of these rates is attached as Exhibit 4.

Mr. Messineo and Ms. Verheyden-Hilliard's hourly rate is, thus, $536. Mr. Wolfe's is $329. Ms. Onisko's is $329. Ms. Kim and Ms. Davis' are each $146. Fees are assessed at the current rates, as is customary, to compensate for the delay in payment in fee-shifting cases.

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved or cited with favor in a number of cases. See, Bynum v. District of Columbia, 412 F. Supp. 2d 73, (finding hourly rates contained in fee petition[2] based on the Updated Laffey Matrix to be reasonable); Salazar v. District of Columbia, 123 F. Supp. 2d 8, 14-15 (D.D.C. 2000); cf. McDowell v. District of Columbia, Civil Action No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 at *8 - *10 (citing Salazar with approval for the use of this updated Laffey Matrix). See http://www.justiceintheworkplace.com/laffey.html.

The propriety of the rates established by the updated Laffey Matrix are corroborated by the fact that they fall within the ranges reported for private Washington, D.C. firms as reported by the December, 2007 billing survey issued by the National Law Journal.[3] "Courts in this circuit recognize National Law Surveys as sufficient evidence of the reasonableness of attorney fee rates." Lans v. Dell Computer Corp., Civil Action Nos. 97-2526, 99-3153 (JGP) (D.D.C. 2005), September 30, 2005 Memorandum Opinion at 3-4; See also Salazar v. District of Columbia, 123

---

[2] The fee petition, docket entry no.132, in Civil 3 Action 02-956 clearly reflects submission of the Updated Laffey Matrix submitted by plaintiffs herein. See Exhibit 5, Fee Petition at 56 - 58; The Court explicitly relied on this modified/updated Laffey Matrix. Bynum at 21 - 22.

[3] According to the survey, the hourly billing rate for Washington, D.C. partners are in the following ranges: $395 - $675 at Arent Fox; $510 - $800 at Covington & Burling; $425 - $825 with a median of $550 at Dickstein Shapiro; $300 - $850 with a median of $590 at Hogan & Hartson; $320 - $920 with a median of $525 at Patton Boggs. See also Exhibit 6, Firm-by-Firm Sampling of Billing Rates Nationwide, *The National Law Journal*, December 10, 2007.

F. Supp.2d 8, 14 (D.D.C. 2000); <u>Davis v. The Catholic Univ. of Am.</u>, No. 99-1153, 1999 WL 813663 at *4 (D.D.C. August 31, 1999).

**C. Expenses**

As part of the award of attorneys' fees, plaintiffs are also entitled to recover costs for expenses.  Plaintiffs have submitted an itemization of such expenses.


January 22, 2008                                        Respectfully submitted,


                                                        _/s/_____
                                                        Carl Messineo, [450033]
                                                        Mara Verheyden-Hilliard [450031]
                                                        PARTNERSHIP FOR CIVIL JUSTICE
                                                        617 Florida Avenue, NW
                                                        Washington, D.C. 20001
                                                        (202) 232-1180
                                                        (202) 350-9557 fax

                                                        *Counsel for <u>Barham</u> plaintiffs*