UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JEFFREY BARHAM, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-2283 (EGS) |
| | ) | |
| CHIEF CHARLES H. RAMSEY, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT, NOTICE TO CLASS, AND NOTICE OF FAIRNESS HEARING**

By and through their undersigned counsel, the class representatives in this action ("Class Representatives")[1] and the certified class of Plaintiffs (collectively, the "Plaintiff Class" or "Plaintiffs") and the United States of America; Sally Jewell, U.S. Secretary of the Interior, in her official capacity; Loretta E. Lynch, the U.S. Attorney General, in her official capacity; and former-Major Richard Murphy ("Major Murphy") of the U.S. Park Police (the "Park Police") in his individual and official capacities (collectively, the "Federal Defendants") respectfully submit this memorandum of points and authorities in support of their joint motion ("Motion") for preliminary approval of the proposed settlement between the Plaintiff Class and the Federal Defendants (the "Proposed Settlement").

For reasons set forth herein, the Proposed Settlement, which includes significant equitable reform and a total monetary component of $2,208,000, warrants preliminary approval

---

[1]     The Class Representatives are Mary Canales, William Durham, Noah Falk, Jorge Garcia-Spitz, Mark Allan Jackson, Casey Legler, Charlcie Legler, Sally A. Norton, John Passacantando, Joseph Phelan, Nicole Prichard, Morgan Ress, Macdonald Scott, Jeri Wohlberg, Lesley Wood, Samantha Young, and Stephen Zimmerman.

of this Court, subject to the Court's final consideration at a fairness hearing.  The Proposed Settlement is (i) fair, reasonable, and adequate, in the best interest of the Plaintiff Class as a whole; and (ii) satisfies the requirements of Federal Rule of Civil Procedure ("Rule") 23 and due process.  The monetary relief in the Proposed Settlement is fair, reasonable, and adequate, and, when combined with settlement payments already made by the District Defendants in this class action lawsuit,[2] results in payments to members of the Plaintiff Class totaling nearly four times that received by class members who claimed nearly identical damages in the same conditions of confinement for September 27, 2002, protest-related arrests in *Burgin v. District of Columbia*, Civil Action No. 03-02005 (EGS) (D.D.C.).  The attorneys' fees and expenses in the Proposed Settlement are likewise reasonable and reflect the considerable time and expenses incurred by Plaintiffs' counsel, who ably, diligently, and professionally litigated this case against the Federal Defendants.

Lastly, and significantly, the Proposed Settlement includes meaningful and important equitable relief.  The parties believe that the changes the Park Police has made and will make to its policies and procedures for handling mass demonstrations and potential high volume arrests -- including in the context of inter-jurisdictional cooperation, which context underlies this matter -- will avoid the circumstances that occurred on September 27, 2002 from recurring.  This equitable relief balances the role of the Nation's Capital as the location of prominent demonstrations and mass assemblies with the significant national security concerns that exist in protecting the seat of our Government and its agencies.  Further, the reforms in Park Police procedures for responding to mass demonstrations both serve to "benefit future generations" -- as this Court characterized

---

[2]     The "District Defendants" refers to the District of Columbia; MPD; the Mayor of the District of Columbia in his or her official capacity; former MPD Chief of Police Charles H. Ramsey in his official and individual capacities; and MPD Assistant Chief of Police Peter A. Newsham in his official and individual capacities.

the District Settlement (defined below) in this action -- and establishes a model of "best practices" for law enforcement.

The District uniquely contains many different law enforcement agencies that have responsibilities for protests with marches and assemblies that routinely cross multiple federal and local jurisdictions. The equitable reforms in the Proposed Settlement combined with the relief obtained through other First Amendment litigation in the District by Class Counsel, as well as the District's enactment of the landmark First Amendment Rights and Police Standards Act, places the Nation's Capital at the forefront of balancing the needs of law enforcement with respect for cherished First Amendment rights.

In sum, the Plaintiff Class and the Federal Defendants urge this Court to promptly grant this Motion to set the course for the Proposed Settlement to be approved in the near future to conclude this settlement before the trial in *Chang v. United States*, Civ. A. No. 02-2010 (EGS) (D.D.C.), which is set to commence on July 1, 2015.

## BACKGROUND

## I.  PROCEDURAL HISTORY.

The procedural history of this action reveals dedicated efforts by counsel for the Plaintiff Class ("Class Counsel") and the Federal Defendants to represent their clients with the upmost diligence and care.

The Class Representatives commenced this action on November 19, 2002, on their own behalf and on behalf of those similarly situated who were arrested in Pershing Park on September 27, 2002, which coincided with meetings in Washington, DC of the International Monetary Fund and the World Bank ("IMF/WB").  R.1 (Compl.).  The Plaintiff Class generally alleged that the Park Police assisted MPD officers in confining the members of the Plaintiff

Class in Pershing Park and subsequently physically arresting and detaining them for hours, all without probable cause.

Subsequently, the Plaintiff Class amended their complaint on three occasions, ultimately alleging the following general claims against the Federal Defendants: (i) monetary claims against Major Murphy arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics ("Bivens")*, 403 U.S. 388 (1971), and Section 1983 of Title 42 of the U.S. Code; and (ii) injunctive claims against the Federal Defendants seeking a declaratory judgment that Plaintiffs' arrests were unlawful and to enjoin federal law enforcement authorities from using in the future certain practices employed in Plaintiffs' arrests, and (iii) prayers for expungement relief.  R.216 (3d Amd. Compl.).

The Federal Defendants unsuccessfully sought to dispose of Plaintiffs' claims in their favor at the threshold.  *See Barham v. Ramsey*, Civ. A. No. 02-2283 (EGS), 2007 WL 2007335, at *1 (D.D.C. July 1, 2007).  Thereafter, Major Murphy took an unsuccessful appeal of the Court's denial of qualified immunity to the D.C. Circuit, which ruled that Major Murphy's entitlement to qualified immunity turned on disputed issues of fact.  *Barham v. Salazar*, 556 F.3d 844, 849 (D.C. Cir. 2009).

Also, by Memorandum Opinion and Order dated September 24, 2003 (R.56), the Court, over the Federal Defendants' objections, provisionally certified the Plaintiff Class in this action to consist of "all individuals who were arrested in Pershing Park in the District of Columbia on September 27, 2002[.]"  *Barham v. Ramsey*, 217 F.R.D. 262, 275 (D.D.C. 2003).[3]

---

[3]     This provisional certification was subject only to any possible motion for reconsideration filed by the District Defendants.  On October 9, 2003, the District Defendants advised the Court that they did "not seek the Court's reconsideration of its provisional decision to certify the Barham case as a class action."  R.64.

Before and after these initial rulings, Plaintiffs and the Federal Defendants engaged in extensive discovery, which at times required judicial intervention to resolve disputes. *See, e.g.,* R.355, 479. Since mid-2010, counsel for Plaintiffs and the Federal Defendants have diligently explored a settlement of this action, including exchanges of legal theories, damages, and intensive settlement discussions. Ultimately, due in significant part to Class Counsel's exceptional efforts, and the committed assistance of mediator Cornish Hitchcock for portions of the discussions, the parties have reached the Proposed Settlement.

## II. PLAINTIFFS' SETTLEMENT WITH THE DISTRICT DEFENDANTS

In February 2010, the District Defendants and the Plaintiff Class reached a tentative settlement as to the claims pending against the District Defendants (the "District Settlement"). R.595. After observing the proper prerequisites, the Court granted final approval of the District Settlement on September 22, 2010.

Prior to the approval of the District Settlement, and due in substantial part to Plaintiffs' litigation efforts, the Council of the District of Columbia passed the First Amendment Rights and Police Standards Act which caused wide sweeping reforms of MPD's policies and practices concerning mass arrests, including (i) the use of police lines to surround groups of protesters, (ii) arrests based on demonstrating without a permit, (iii) use of dispersal orders, (iv) conditions of confinement and restraint imposed on persons arrested in protests, and (v) other improper techniques MPD allegedly used during the events in Pershing Park on September 27, 2002. R.595-1 (Mot. Prelim. Approval of District Settlement) at 3-14.

Through its Settlement, the District Defendants agreed to further reforms concerning (a) document managements systems, (b) litigation hold procedures, (c) preservation of command center records and data, and (d) procedures for indexing and logging photographic, video, and other recorded evidence. *Id.* at 21-22. The District Settlement also provided for individual

orders annulling class members' arrests pursuant to prior expungement orders issued by the Court.  *Id.* at 16.

As to monetary relief, the District Defendants agreed to pay each Class Representative $50,000 and each other member of the class roughly $18,000, depending on the number of claimants.  *Id.* at 16-18.  The District Defendants also agreed to pay Class Counsel a total of $2,463,333 in attorneys' fees and costs, which represented 29.9% of the total, purely monetary, relief in that settlement.  *Id.* at 23.

## DISCUSSION

The relief contemplated by Plaintiffs' and the Federal Defendants' Proposed Settlement is fair, reasonable, and adequate, and complies with all relevant legal authorities.  Further, the parties' timetable for persons to receive notice, to object, and to opt-out of the proposed monetary relief are consistent with legal requirements and provide a meaningful opportunity for those interested in this matter to be heard.  In sum, the Court should approve on a preliminary basis the Proposed Settlement and enter the parties' proposed schedule to govern further review of it.

## I.    ALL ELEMENTS OF THE PROPOSED SETTLEMENT ARE FAIR, REASONABLE, AND ADEQUATE.

The Proposed Settlement consists of three general components: (i) certain changes in Park Police policies concerning mass arrests; (ii) monetary relief for the Plaintiff Class; and (iii) attorneys' fees and costs for Class Counsel.  These components each, and collectively, constitute fair, reasonable, and adequate consideration for Plaintiffs' claims in light of controlling law, the circumstances of this case, and the respective litigation risk of Plaintiffs and the Federal Defendants.  Also, in conjunction with the Proposed Settlement, counsel for the Federal

Defendants have apprised Class Counsel regarding the expungement efforts undertaken by the Federal Bureau of Investigation ("FBI") at the request of the District Defendants.

**A.     Amendments to the Park Police's Policies and Procedures Are Meaningful Reforms and Address the Concerns Underlying Plaintiffs' Claims.**

The Proposed Settlement includes substantive changes in the Park Police's handling of mass demonstrations, specifically where issues of arrest may arise in the context of First Amendment protected activity. These changes address the use of police lines, particularized probable cause, and the provision of notice, fair warnings, and the opportunity to disperse or otherwise comply with police orders.  The Class Representatives and Class Counsel have maintained a determination to achieve meaningful equitable reform in light of the circumstances underlying the events of this matter to avoid similar occurrences in the future.  All parties believe that not only has this been achieved in this Proposed Settlement, but that the amendments to the Park Police's policies and procedures as identified in this agreement serve as a model for law enforcement policies and procedures in similar contexts.  Portions of these amendments are highlighted below.

**1.     Changes to Policies and Practices -- Interagency Coordination During Mass Arrests.**

In the Proposed Settlement, the Park Police has agreed to revise and reissue its "Memorandum to the Force regarding Coordination with Other Law Enforcement Agencies and the Handling of Possible Violations by Other Agencies during Such Situations" to include the following:

> If the violation involves use of Force officers to help effectuate high volume arrests and prevent demonstrators from being free to leave or disperse in a manner inconsistent with General Order 2108.03, the Force officer in charge shall request the other agency's on-site supervisor to provide demonstrators with dispersal order(s) and an opportunity to comply.

2.      **Changes to Policies and Practices -- Mass Arrest Policies and Procedures**.

In the Proposed Settlement, the Park Police has agreed to revise and reissue its General Order regarding "High Volume Arrest Procedures" to include the following:

- In Section 2108.01, entitled "POLICY:"

  o   Force officers shall not independently, or at the request of another police agency, substantially surround or enclose a demonstration group and prevent them from leaving the area unless either (1) warnings and an opportunity to disperse have occurred in the situations detailed in General Order 2108.03A and B, or (2) under the circumstances detailed in General Order 2108.03C-D."

- In Section 2108.03, entitled "HIGH VOLUME ARREST PROCEDURES FOR NOTICE, CLOSING THE AREA, AND OPPORTUNITY TO DISPERSE:"

  o   [A] All arresting officers should be positioned in the rear of the crowd so they can hear the warnings, which should be issued by a Force Official at the rank of Lieutenant or above. The crowd shall then be advised, using sound amplification equipment as needed, that they (the group) are in violation of a specified law and will be arrested if they do not disperse or cease their illegal activity.  The arresting officers positioned in the rear of the crowd should give a verbal and/or physical indication to the official giving the warnings, confirming that they are audible. Reasonable exit avenue(s) will be made available to allow members of the crowd to exit the area and the warnings shall inform the crowd where the exit avenue(s) is located.  The warning shall be repeated three times, with approximately

2 minutes between each warning, to give those who choose not to be arrested time to leave the immediate closed area.  If recorded over the Force radio, a dispatcher shall be asked to give a time check prior to issuing each warning.

> SAMPLE WARNING:  Attention.  This is [identify announcing officer] of the United States Park Police.  Because you are in violation of regulations applicable to this area, that prohibit [describe the violation] your permit to demonstrate on [describe area] is revoked.  You must leave [describe area] now by using one of the available exists located at [describe available exit area(s)].    All persons remaining will be arrested. (This is your final warning.  ADD TO LAST WARNING ONLY.)

o  [B] In the event that the crowd is a demonstration [as more fully defined at 36 CFR 7.96(g)(1)(i)] engaging in unlawful acts, no area will be closed around them by using a police line to encircle, or substantially encircle them, except when (1) probable cause exists to believe that a significant number or percentage of the persons located in the area have committed unlawful acts, (2) the Force has the ability to identify those individuals and have decided to arrest them, and (3) that the area needs to be closed to help maintain order and public safety during the arrest process.

o  [E] In situations detailed in Subsection B, in the event that the Force is requested by another police agency to partially enclose or surround a demonstration activity due to unlawful violations, the Force OIC shall work with the other police agency's OIC to ensure that necessary actions are taken that exit avenues are clearly made known to demonstrators, including as necessary the use of amplified warnings.  If Force officers are part of the police line, the exit avenues should be conveyed to those officers over Force radio and such officers should convey such exit avenue

information to persons of their own initiative who are seeking to leave the area.

**B.      The FBI Has Taken Appropriate Efforts to Expunge Arrest Records of the Class Members in Response to Requests Made by the District Defendants and Is Taking Additional Efforts to Ensure All Records Have Been <u>Expunged.</u>**

As background, expungement and annulment relief was granted by Court Order dated January 28, 2008 (Dkt. No. 405).  Among other relief set forth in that Order, the Court declared that "The arrests of the *Barham* Plaintiffs and the absent class members are hereby declared null and void. Each of the *Barham* plaintiffs and the individual absent class members is authorized to deny the occurrence of his or her arrest that day, without being subject to any penalty of perjury, fraud or other offense premised upon misrepresentation or deception in response to any inquiry, whether posed orally or in writing. These rights accrue to the full benefit of any absent class member regardless of whether an individualized entry of a nullification order [see below] is entered."

The January 28, 2008 Order also provided for the creation of individualized orders of annulment, and subsequently for each participating class member the Clerk of Court received and the Court issued an order that states as follows:

**ORDER**

The arrest of [insert name, date of birth, and social security number] on September 27, 2002, in the District of Columbia is hereby declared null and void.

[Mr. or Ms. insert last name] is authorized to deny the occurrence of his or her arrest that day, without being subject to any penalty of perjury, fraud, or other offense premised upon misrepresentation or deception in response to any query, whether posed orally or in writing.

So Ordered on this ____ day of _____ [date to be inserted]

[signed]
EMMET G. SULLIVAN
United States District Judge

The expungement relief in the January 28, 2008 Order required: "The District of Columbia shall provide for the expungement of the *Barham* Plaintiffs' arrest records and for those of all absent class members (all persons arrested on September 27, 2002 [in the] mass arrest of persons that took place in Pershing Park) relating to the September 27, 2002 arrests that are maintained by the District of Columbia[.]"  The Order also required that "The District of Columbia is to use its best efforts to procure expungement of the September 27, 2002 arrest records of any Pershing Park case Plaintiff or absent class member in the possession of the United States Government (including, but not limited to, the Federal Bureau of Investigation), [or] any state or local government[.]"

Previously in this litigation, the FBI informed Class Counsel of steps it undertook to expunge the arrests of Class Members from its criminal history information systems. Additionally, the FBI is now in the process of running the known list of Class Members against information systems containing criminal history information maintained by the Criminal Justice Information Services Division ("CJIS") to confirm that there are no records in any such file for a Class Member of an arrest made by the Metropolitan Police Department ("MPD") on or about September 27, 2002.  If the FBI identifies any positive hits from these searches the FBI, through

counsel, will promptly seek a request from the MPD to expunge these records, and will so advise

Class Counsel of any such request, and will promptly comply with any MPD request to so

expunge, and will advise Class Counsel of any such compliance undertaken.

Once the FBI concludes these efforts and apprises Class Counsel of the results, the

parties anticipate filing a subsequent motion seeking the Court's approval of a voluntary

dismissal without prejudice of the claims currently pending against the FBI in this matter, which

with the Proposed Settlement will dispense with all remaining claims in this action.

### C.    The Monetary Relief for the Plaintiff Class is Fair, Reasonable, and Adequate.

The Proposed Settlement includes as monetary relief for the Plaintiff Class a maximum

possible settlement fund of $1.64 million dollars to be paid by the U.S. Department of the

Interior on behalf of Major Murphy.  The parties reached an agreement on this amount assuming

the total number of arrestees was 386, a class participation rate of 85%, and a projected payment

to each class member of $5,000, rounding to the nearest whole person.  This settlement is fair,

reasonable, and adequate to all parties.

*First*, based on Class Counsel's significant outreach efforts and success in reaching class

members in the District Settlement, the Proposed Settlement includes a higher assumed

participation.   That is, in the District Settlement, the participation rate exceeded 75%.

Accordingly, the parties here have set an expected participation rate of 85% in calculating the

maximum settlement fund.

*Second*, establishing a maximum settlement fund based on reasonable assumptions is fair

and reasonable to all involved.  It allows the Federal Defendants to have a maximum out of

pocket expenditure, while permitting each member of the Plaintiff class a recovery in the

anticipated recovery range.  Should the participation rate be equal to or lower than 328 eligible

Claimants (85% of the estimated total number of arrestees), each eligible Claimant shall receive a payment of $5,000. Should the participation rate be higher than 328 eligible Claimants, each eligible Claimant shall be allocated and awarded a pro-rata share of the Class Fund. This will result in a payment of some measure less than $5,000. *See* Proposed Settlement at II.A.2, Ex. 1. Even were all class members to participate (representing a 100% participation rate), each class member would still receive $4,248.70.

*Third*, the total size of the settlement fund and the amount allocated to each Plaintiff represents fair and adequate consideration for their claims in this action.   Together with payments from the District Settlement, each member of the Plaintiff Class who participates in both settlements will have received approximately $21,000 in recovery with the Class Representatives having received $55,000 each.   These recoveries compare favorably to recoveries in other similar actions, which were found to be fair, reasonable, and adequate.

For example, each class member in *Burgin v. District of Columbia*, Civ. A. No. 03-02005 (EGS) (D.D.C.) at R.65, received approximately $6,000.   This is so despite the *Burgin* class members having been arrested on the same date as Plaintiffs and having been largely merged by MPD during their physical detention.   In other words, as a class, the *Burgin* arrestees from Vermont and K suffered identical injury and identical conditions and durations of confinement as Plaintiffs, but Plaintiffs will in total have received nearly four times the recovery.   The total recovery here for class members is also similar to which the Court found fair, reasonable, and adequate in *Becker v. District of Columbia*, Civ. A. No. 01-0811 (PLF) (D.D.C.), a case involving mass arrests occurring on April 15, 2000.

*Fourth,* the proposed monetary relief properly balances potential litigation risks that Plaintiffs might still face should they continue to litigate this action.   The Federal Defendants

have moved for summary judgment in *Chang v. United States*, Civ. A. No. 02-2010 (EGS) (D.D.C.), on a number of claims similar to those asserted by Plaintiffs here.  Although Class Counsel believes that the Plaintiff Class would prevail at trial, a recovery against the Federal Defendants is not a certainty at this time.  Indeed, the D.C. Circuit opined that Major Murphy may still be entitled to qualified immunity should certain disputed issues of fact be resolved in his favor.  Should Major Murphy prevail on that defense, the Plaintiff Class would not be entitled to monetary relief.

*Fifth*, under the terms of the Proposed Settlement the Class Representatives are to receive the same amounts as the class members and have foregone receiving any enhancement.  That is, the Proposed Settlement seeks to compensate all Plaintiffs equally in recognition that the Class Representative received additional sums to account for their diligent participation in this action through the District Settlement. The Class Representatives continued to commit time in the years since the District Settlement to conscientiously evaluate settlement discussions and diligently advocate for the class members interests.

*Sixth, and lastly*, the funds for the Proposed Settlement have now been allocated by the U.S. Department of the Interior on behalf of Major Murphy and the proposed settlement fund is, thus, already tentatively funded.

In sum, the monetary payment to each class member is fair and adequate in light of its assumptions, comparisons to other similar cases, the remaining litigation risks in this action, the equality to all class members, and the promptness with which payment is expected.

**D.**    **Class Counsel's Attorneys' Fees and Costs Are Fair, Reasonable, and Adequate.**

The Proposed Settlement provides an award of $568,000.00 to Class Counsel as attorneys' fees and costs.  When awarding attorneys' fees in a class settlement, the court has a

duty to ensure that the claim for attorneys' fees is reasonable.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Here, the attorneys' fees and costs in the Proposed Settlement satisfy this test.

As an initial matter, the attorneys' fees were negotiated after the amount of recovery to class members was negotiated, and reflects a negotiation of the Federal Defendants' potential exposure on attorneys' fees less litigation risk that the Plaintiffs may face should this case proceed to trial.  Accordingly, the attorneys' fees are allocated separately and independently of the class members' recovery.  Indeed, the award of attorneys' fees does not decrease the amount received by the class members.

Further, the attorneys' fees in the Proposed Settlement satisfy legal precedents for assessing fairness in cases such as this.  "In a true common fund case, the attorneys' fees would be taken from a fund shared in common with class plaintiffs; therefore, the amount recovered by plaintiffs is reduced by the amount awarded in attorneys' fees."  *Hensley v. Wade*, 461 U.S. 30, 36 (1983).  "The proper measure of [attorneys'] fees in a comon fund case is a percentage of the fund."  *Swedish Hosp. v. Shalala*, 1 F.3d 1261, 1263 (D.C. Cir. 1993).  This is so because:

> the lodestar approach in common fund cases encourages significant elements of inefficiency . . . [and] if we apply the lodestar method to the common fund case, then the attorney inefficiently expending an excess amount of time does stand to gain by that inefficiency if the awarding court does not ultimately recognize the inefficiency in the far-from-exact testing of the fee award hearing. The danger that the court will not recognize unreasonably expended hours is magnified by the fact that in the common fund case the only party having an adverse interest at the time of the award will be the attorney's own clients, often a diverse and scattered group with small individual stakes.

*Id.*

Here, the Proposed Settlement does not constitute a true common fund as the parties established a separate attorneys' fee fund.  That is, this case does "not present the typical conflict of interest between class counsel and class members that underlies the application of the

percentage of recovery method" because the class members' recovery is not affected by the fee award. *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839, at *4 (D.D.C. July 16, 2001) (Hogan, C.J.). Nonetheless, it is appropriate to consider this case to be a "constructive common fund" case because "the agreement to pay settlement claims and attorneys' fees yielded a calculable amount" against which to base a percentage of recovery evaluation. *Id.* Accordingly, the Court should assess the fairness and reasonableness of the attorneys' fees by summing the collective relief and analyzing the percentage of that relief assigned to attorneys' fees in light of existing precedents.

Even were the Court to focus solely on the comparison of the amount of attorneys' fees against the settlement fund (and exclude consideration stemming from changes in the Park Police's policies), the attorneys' fees fall comfortably into the range of acceptable class counsel fees. When all pure monetary components of the Proposed Settlement (settlement fund and attorneys' fees and costs) are combined, the total settlement equals $2,208,000.00 with $568,000.00 set aside for attorneys' fees and costs. As such, the attorneys' fees and costs amount to 25.7% of the monetary relief. This percentage is consistent with other class settlements in this District. *See Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 81 (D.D.C. 2006) (Lamberth, J.) (awarding 33% of total monetary relief as fair and reasonable attorneys' fees); *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *4 (award of 33% fair and reasonable); *see also* Federal Judiciary Center, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69, 90 (1996) (reporting that most class action fee awards, in its study of 407 class action lawsuits, "were between 20% and 40% of the gross monetary settlement" and that "attorneys' fees were generally in the traditional range of approximately one-third of the total settlement"); Reagan W.

Silber & Frank E. Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 545-46 (1998) (reporting results of a 1994 study by National Economic Research Associates that attorneys' fees in class actions averaged 32% of the recovery, regardless of case size, and averaged 34.74% when the fees and expenses were added together). Notably, the percentage of attorneys' fees in the Proposed Settlement (25.7%) is less than the percentage in the District Settlement (29.9%) when comparing purely monetary components, and the Court approved the attorneys' fees in the District Settlement as fair and reasonable. R.640 (Order of 9/22/2010).

Additionally, the Class Representatives believe that Class Counsel's representation in this litigation has been exceptional, and all agree (including the Federal Defendants) that Class Counsel expended significant time and energy in capably and diligently representing the Plaintiff Class. As noted above (*supra* at 2-5), the procedural history of this case, which has now been pending for almost 13 years, reflects a hard fought, protracted, complex, and resource-intensive litigation. The docket alone proves these points, now encompassing more than 1,030 filings. There is no room for dispute, Class Counsel dutifully and professionally represented the Plaintiff Class and have achieved significant and impactful results from their efforts. *See also* R.595-1 (Mot. Prelim. Approval of District Settlement) at 26-28.

Lastly, in this resolution, Class Counsel has forgone any additional recovery of costs and expenses. Class Counsel has also forgone recovery of additional fees and costs attributed to necessary services during administration of the class claims.

In sum, the attorneys' fees are reasonable as a percentage of the recovery, measured strictly in monetary terms. The benefit to the class from counsels' services is far greater than simply the monetary relief as is evidenced by the substantial advancement of key constitutional

rights issues and matters of public integrity in this litigation and the securing of meaningful and important equitable relief.

## II. THE PARTIES' PROPOSED SCHEDULE IS FAIR AND COMPLIES WITH ALL APPLICABLE AUTHORITIES.

The Proposed Settlement, proposed class notice, and opportunity to opt out appropriately accommodates the due process interests of class members to opt out of the monetary portion of the class settlement. The notice, hearing and opt-out provisions satisfy and exceed the requirements of Fed. R. Civ. P. 23(e), which governs settlement notice issuance.

As required by the applicable rule, the proposed notice will issue "in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1), the approval process provides for a fairness hearing, Fed. R. Civ. P. 23(e)(2), a copy of the settlement agreement is identified, Fed. R. Civ. P. 23(e)(3), while discretionary, the proposed process provides for a second or supplemental opt-out opportunity for class members, Fed. R. Civ. P. 23(e)(4), provides a mechanism for class members to present objection, Fed. R. Civ. P. 23(e)(5), and offers a supplemental period of thirty (30) days to complement the original seventy-five (75) day period manifest in the District Settlement during which any additional heretofore non-participating class members may submit a proof of claim (Ex. 5).

If an eligible Class Member did not file a timely claim in the District of Columbia settlement, the process establishes a thirty (30) day supplemental claim period in which he or she may file a timely and eligible Proof of Claim (Ex. 5) and participate in the proposed settlement with the Federal Defendants.

A.        **Notice is Directed in a Reasonable Manner Pursuant to Rule 23(e)(1).**

The distribution and substance of the proposed notice satisfies all requirements for notice to a Rule 23(b)(3) class, which are the strictest and the fullest notice requirements of any class type.  *See* Fed. R. Civ. P. 23(c)(2); Proposed Notice, Exs. 2, 3, 4.

Participants to the District Settlement *will not need to submit a new claim form* to be deemed eligible and participating in the Proposed Settlement.[4]  By default, such persons are automatically deemed participants in the Proposed Settlement without need for further action. Should any wish to opt out or exclude themselves, they can do so upon their own initiative.

This streamlined procedure is intended to maximize participation of known class members.  This default procedure will obviate the need to start anew given that notice to, and extraordinary efforts to reach, the Plaintiff Class has already occurred on a large-scale and wide sweeping basis in regards to the District Settlement.  Notably, the notice and claim period for the District Settlement, which lasted for 75 days, was already approved by the Court as reasonable and satisfactory under the mandates of Rule 23.

The Proposed Settlement provides for a supplemental claims period for an additional thirty (30) days (the "Supplemental Period") in which any heretofore non-participating class member, to the extent any may come forward given the thoroughness of outreach efforts in connection with the District Settlement, may participate and receive compensation in the Proposed Settlement.  Class Counsel are aware of approximately five (5) individuals who may be eligible class members and who failed to file a timely claim in connection with the District of Columbia settlement.  Efforts are already underway to reach out to those persons, alert them to

---

[4]        This approach is consistent with best practices to minimize burdens on claimants and streamline or eliminate claim procedures that otherwise could function as a barrier or filter to participation.  *See e.g.,* Federal Judicial Center, *Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide,* 2010 at 6.

the Proposed Settlement, and determine if any updates to contact information is needed for issuance of notice to each.[5]

The scope of notice shall include individual notice to all members who can be identified through reasonable effort. *See* Fed. R. Civ. P. 23(c)(2)(B).  The expansive notice and outreach efforts in connection with the District Settlement have already resulted in the identification of all members who can be identified through reasonable effort, an extensive undertaking that reached 85% of the Plaintiff Class.

At the Fairness Hearing for the District Settlement on September 22, 2010, the Court recognized the "excellent and thorough efforts" to reach the Plaintiff Class which "yielded a tremendous level of participation by members of the class."  Fairness Hearing Tr. of 9/22/2010 at at 11.

As reflected in the Plaintiffs' and the District Defendants' Joint Motion for Final Approval of Proposed Class Settlement and Payment Distribution (R. 629), prior notice was sent to the last known address of all identifiable Class Members, updated as available through the U.S. Postal Service National Change of Address ("NCOA") database.  The Claims Administrator also used a commercial third party locator service, the Accurint Service, which draws upon a broader set of information than the NCOA database including public records and credit report header information, as an additional source to secure updated addresses for potential Class Members.

---

[5]     For example, this Court filed in the record of this matter a letter from Pola Sieverding (R. 642) who resides on a different continent and who did not timely file a claim in connection with the District of Columbia settlement.   R.642. Class Counsel has already been in direct communication with Ms. Sieverding in Europe to confirm and update her contact information and ensure that she has every opportunity to participate in the Proposed Settlement.

The administrator established a unique website for class related information. Information and hyperlinks to the online Notice and Proof of Claims forms were posted on the front page of the D.C. Metropolitan Police Department's website, the D.C. Office of the Attorney General's website, and on the front of the Partnership for Civil Justice Fund's website.

A short form of the Class Notice was published once a week for two weeks, including in one Sunday edition, in the *Washington Post*, and in two consecutive weekly editions of the *Washington City Paper*. A full page notice was run twice in the national-circulation magazine, *The Nation*, and twice in the national magazine, *The Progressive*, and was posted as an online banner ad on the website of the *Huffington Post*.

Using telephone numbers from the Accurint service, the Claims Administrator engaged in phone banking efforts to call those numbers and reach possible class members who had not yet filed claims. Class Counsel independently sent email announcements to thousands of persons who had signed up for updates on the Partnership for Civil Justice Fund's work generally or the *Barham* class action specifically. Recipients were asked to redistribute the announcement widely and post on appropriate website and social networking media. Links or "widgets" were available in the email to enable the recipient to re-transmit the email to friend, post to Facebook pages or circulate on Twitter. Midway through the claims period, the Claims Administrator sent postcard reminder notices to known or potential Class Members who had not yet filed a Proof of Claim. With one month remaining in the claims period, Class Counsel undertook a second email campaign to encourage persons that time was running out and to file claims if they were eligible. Class Counsel set up an internet based "E-Card" so that known Class Members (who might have knowledge of other class members) or anyone would be sent an email notice and announcement of the settlement and claims process. Class Counsel also republicized the settlement through

news interviews providing the settlement website and other details. *See* Joint Motion for Final Approval of Proposed Class Settlement and Payment Distribution at 5-9.

These above-referenced and extensive efforts are believed to have reached and identified and conveyed notice of this class action and the means to participate in it to "all members who can be identified through reasonable effort." *See* Fed. R. Civ. P. 23(c)(2)(B).  Given that this extensive notice effort also advised that participating class members would receive up to $18,000 in compensation from the District, as well as additional meaningful relief including expungement, there existed a very strong incentive for everyone who was a class member to identify themselves and participate.

Given the expansive outreach efforts, above, the Parties believe that all individuals eligible to participate in the Proposed Settlement and who can be identified through reasonable effort have *already* been identified as eligible or participating members to the District Settlement.

The scope of notice in this Proposed Settlement, hereinafter "Settlement Notice," will include individual notice to all eligible Class Members identified through the District Settlement. The Claims Administrator possesses addresses and/or email addresses for all such persons.  A short-form postcard notice shall be sent to these physical and electronic mail addresses.  The short-form Postcard Notice (Ex. 2) states in plain, easily understood language each component of disclosure required pursuant to Fed. R. Civ. P. 23(c)(2)(B) (notice requirements for (b)(3) classes). In addition, the notice directs recipients to the long-form Detailed Notice (Ex. 3), which is available online or upon request to the Claims Administrator.

The Postcard Notice will also be sent to the current or last known addresses (physical and/or email) of the approximately five (5) above-referenced persons who may be class members who did not file a timely claim in connection with the District settlement.

The Postcard notice will also be sent to the last known address of potential class members to whom notice of the District settlement was transmitted and whose notice was *not* returned as undeliverable and who did not participate in the District of Columbia settlement.

Identified class members will be reminded and advised in the Settlement Notice(s) to update their contact information, if necessary, in anticipation of compensation from the Proposed Settlement. The NCOA database will be used to update any short-form postcard notices that are returned as undeliverable, and will be re-sent to any updated address.

The parties believe it is unlikely, given the extensive and successful outreach efforts in connection with the District Settlement, that additional eligible claimants can be identified through additional effort beyond the approximately five (5) persons known to Class Counsel referenced above.

The Parties have agreed to open up the 30-day Supplemental Period in which new Proofs of Claim (Ex. 5) can be submitted. This will enable persons who failed to file a timely notice of claim in connection with the District of Columbia settlement to participate in the Proposed Settlement as well as any other class members who come forward and timely file an eligible Proof of Claim.

The class action website, www.PershingParkSettlement.com, the same site used for the District Settlement, will be used to publish the long-form Detailed Notice (Ex. 3). Additional means of publication of notice will include publication for two consecutive weeks in *The Washington City Paper* (*See* Newspaper Notice, Ex. 4, containing the text of such notice)

through dissemination to the Partnership for Civil Justice's general email list and list of persons specifically desiring information regarding Pershing Park related issues, and a link to the class action settlement website will be posted during the Supplemental Period on the front page of the website of the Partnership for Civil Justice Fund and on the website of the National Park Service.

Should any new Proofs of Claim be submitted, eligibility will be determined using the same standards as were applied to determine eligibility under the District Settlement.

Distribution of the Class Fund shall proceed without delay. Unclaimed or undistributed funds, plus any accumulated interest, will revert to the U.S. Department of the Interior by no later than nine (9) months following the date of Final District Court Approval and the exhaustion of any appeals (including any petition for writ of certiorari to the United States Supreme Court).

As discussed in further detail below, although the provision of opt-out rights is discretionary, the Proposed Settlement permits any Class Member to opt-out of the Proposed Settlement during the 30-day Supplemental Period. Those individuals who have previously opted-out or were treated as doing so need take no further action, and remain opted out.

As discussed further below, the Proposed Settlement affords any class member the opportunity to object within the 30-day Supplemental Period.

The 30-day Supplemental Period for joining, opting out or objections, would be reasonable standing alone. The combined time of the notice period in the District Settlement (75 days) and the 30-day Supplemental Period is amply generous and constitutes reasonable notice to the class under Rules 23(c)(2) and 23(e)(1). *See Murthy v. Schafer*, 579 F. Supp. 2d 110, 111 (D.D.C. 2008) (approving 30 day objection and opt-out period); *Oncology & Radiation Assocs., P.A. v. Bristol-Myers Squibb Co.*, Civ. A. No. 01-2313, 2003 WL 21087979, at *2 (D.D.C. May 13, 2003) (Sullivan, J.) (approving 45 day opt-out period); *In re Chinese-Mfr. Drywall Prods.*

*Liab. Litig.*, MDL No. 2047, 2014 WL 4809520, at *17 (E.D. La. Sept. 26, 2014) (approving 30 day opt-out period from order on preliminary approval); *Lowery v. City of Albuquerque*, Civ. A. No. 09–0457, 2013 WL 1010384, at *12 (D.N.M. Feb. 27, 2013) (approving use of 30 day opt-out period from notice date).

The specific timeline contemplated by the Proposed Settlement is as follows:

- Initial notices will issue on or by May 15, 2015;

- The Supplemental Period in which members can submitted new claims or opt-out or object will last 30 days, up to and including, June 15, 2015.

**B.     Provision of a Fairness Hearing Pursuant to Rule 23(e)(2).**

As required by Fed. R. Civ. P. 23(e)(2), the proposed process provides for a fairness hearing, an opportunity for class members to appear themselves or with counsel should they so choose, and that final approval issue upon a finding that the Proposed Settlement is fair, reasonable, and adequate.

As per the notice, Class Members who wish to appear at the Fairness Hearing are required to indicate such interest in writing, postmarked by no later than **June 15, 2015**.

The parties propose that the Fairness Hearing be set for a date convenient to the Court after responses to objections are due to be filed, which is June 22, 2015 and, preferably, before July 1, 2015.

**C.     Submission of the Settlement Agreement Pursuant to Rule 23(e)(3).**

As required by Fed. R. Civ. P. 23(e)(3), the parties seeking approval have filed as an exhibit to this motion a copy of the Settlement Agreement. A copy of the Settlement Agreement shall be posted on the class action website so that it is available to Class Members.

**D.     The Opportunity to Opt-Out for Monetary Relief is Fair [Rule 23(e)(4)]**

The Proposed Settlement protects class members' due process rights and affords the opportunity to opt out of the monetary claims or relief.  The law distinguishes between relatively limited opt out rights for equitable relief from the constitutionally required opt out rights for monetary relief, which trigger jury entitlement rights.

As the Court is aware, this Court certified the Plaintiff Class under Rule 23(b)(2). *Barham*, 217 F.R.D. at 275. Certification under Rule 23(b)(2) is appropriate in civil rights lawsuits where equitable or injunctive relief is necessary to redress group injuries or to effect institutional reform through injunctive relief.  *See* Manual for Complex Litigation §21.142 (4th ed. 2014); *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997) ("civil rights class actions are frequently certified pursuant to Rule 23(b)(2).").

There is no mandatory right to opt out of the prospective equitable relief that may issue in a Rule 23(b)(2) class action. *See Tricor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (*per curiam*); *Bynum*, 412 F. Supp. 2d at 77 (issuing final approval of class action settlement, pursuant to Rule 23(b)(2) "regarding prospective relief, no member of the class may opt-out."); Manual for Complex Litigation §21.142 (4th ed. 2014) (ordinarily, "a Rule 23(b)(2) class action does not permit opting out"); Fed. R. Civ. P. 23(c)(2)(A) (no mandatory requirement that notice must issue to a class certified under Rule 23(b)(2)).

"Although not required, this Circuit has held that District Courts have the discretion to grant opt-out rights in class actions certified pursuant to Fed. R. Civ. P. 23(b)(1) or (2)." *Barham*, 217 F.R.D. at 274 (citing *Eubanks*, 110 F.3d at 94).  A typical circumstance which may justify recognition of notice and opt-out rights in a Rule 23(b)(2) class action, is where there are present demands for both equitable relief (which are resolved by the Court) and monetary relief (which may be resolved by jury), as is present in the instant case. "[W]here both injunctive and

monetary relief are sought, the need to protect the rights of individual class members may necessitate procedural protections beyond those ordinarily provided under (b)(1) and (b)(2)." *Eubanks*, 110 F.3d at 95; *see also* Fed. R. Civ. P. 23 advisory committee's note (2003 amendments).

Consistent with this framework, the Proposed Settlement provides that "[n]o opt outs for the equitable relief are allowed." *See, e.g., Bynum*, 412 F. Supp. 2d at 77 (approving class settlement against District, allowing opt-outs for monetary relief and that "regarding prospective relief, no member of the class may opt-out.").

With respect to opting out opportunities for monetary relief, it is discretionary whether to provide a second opportunity to opt out after the expiration of a first. *See* Fed. R. Civ. P. 23(e)(4) ("the court *may* refuse to approve a settlement unless it affords a new opportunity to request exclusion"); Fed. R. Civ. P. 23 advisory committee's note (2003 amendments) ("Rule 23(e)(3) authorizes the court to refuse to approve a settlement unless the settlement affords a new opportunity to elect exclusion in a case that settles after a certification decision. . . ."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006) ("Neither due process nor Rule 23(e)(3) requires, however, a second opt-out period whenever the final terms change after the initial opt-out period. Requiring a second opt-out period as a blanket rule would disrupt settlement proceedings[.]")

Nevertheless, with respect to monetary claims, the Proposed Settlement allows Class Members the opportunity during the Supplemental Period to opt-out of the Proposed Settlement. Should any Class Member assert an objection to the underlying terms, he or she has the ability to opt-out even notwithstanding that he or she may have already accepted substantial monetary compensation in the District Settlement of this litigation.

The procedure in the Proposed Settlement provides Class Members with all options required by Due Process and the applicable rules and even more than what is merely adequate.

With respect to those individuals who, during or before the District Settlement process, opted out of this lawsuit, each has participated in a separate lawsuit to advance his or her claims regarding the underlying events. Most, although not all, of these separate opt-out claims have proceeded to full resolution within their respective lawsuits. Persons who have previously been deemed to have opted-out need not take any further action.

**E.      Provision of Opportunity for Objections Pursuant to Rule 23(e)(5).**

As required by Fed. R. Civ. P. 23(e)(5), any Class member may object to the proposal during the 30-day Supplemental Period using procedures specified in the notice.

## CONCLUSION

For the reasons stated above, this Court should preliminarily approve the settlement, schedule a hearing for final approval, and approve the proposed form and manner of notice.

The parties jointly urge the Court's expeditious consideration of this motion and fix a date for the Fairness Hearing so that the schedule set forth by the parties, which envisions notice issuing on or before May 15, 2015, can be adhered to.

Respectfully submitted,

Carl Messineo, D.C. Bar #450033
Mara Verheyden-Hilliard, D.C. Bar #450031
PARTNERSHIP FOR CIVIL JUSTICE
617 Florida Avenue, NW
Washington, DC 20001
(202) 232-1180

*Attorneys for the Plaintiff Class*

VINCENT H. COHEN, JR., D.C. Bar #471489
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: 
MARINA UTGOFF BRASWELL,
D.C. Bar #416587
BRIAN P. HUDAK
Assistant United States Attorneys
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2549

*Attorneys for the Federal Defendants*